No. 05-3431
(DEATH PENALTY CASE)

IN THE
United States Court of Appeals
for the Eighth Circuit

**JEFFREY WILLIAM PAUL,**
Appellant,

v.

**UNITED STATES OF AMERICA,**
Appellee.

On Appeal from the United States District Court
for the Western District of Arkansas
Hot Springs Division

# APPELLEE'S BRIEF

ROBERT C. BALFE
United States Attorney
Western District of Arkansas

STEVEN N. SNYDER
WILLIAM M. CROMWELL
Assistant United States Attorneys
Western District of Arkansas

MARGARET P. GRIFFEY
Chief, Capital Case Unit
United States Department of Justice

J. RICHARD BROUGHTON
Attorney, Capital Case Unit
United States Department of Justice
1331 F Street, NW
Washington, D.C. 20530
(202) 616-8347
Richard.Broughton@usdoj.gov

COUNSEL FOR THE UNITED STATES

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

STATEMENT OF THE STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I. Paul fails to establish that his attorneys unreasonably failed to investigate and present his mental, medical, and physical history, and that the outcome of the proceedings probably would have been different in the absence of these alleged errors. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

A. Paul's counsel conducted a professionally reasonable investigation into possible mitigating evidence. . . . . . . . . . . . . . . . . . 9

B. Counsel presented a competent and professionally reasonable mitigation case to the jury, and ultimately convinced the jury to find the existence of some mitigating factors. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

C. Counsel's performance did not prejudice Paul because there is no reasonable probability that the jury would have weighed the aggravation and mitigation evidence differently enough to ultimately avoid a death sentence. . . . . . . . . . 25

II. Paul fails to establish that his attorneys unreasonably failed to investigate and assert his incompetence to stand trial, and that the outcome of the proceedings would have been different in the absence of this alleged error. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

A. Counsel diligently and reasonably investigated, and asserted questions concerning, Paul's competence to stand trial by filing multiple motions for mental evaluations and by ensuring that Paul's mental state was considered by multiple psychiatric experts. . . . . . . . . . . . . . . . . 29

B. Paul cannot establish prejudice arising from counsel's performance because there is no reasonably probability that further proceedings on this issue would have resulted in a finding of his incompetence. . . . . . . . . . . . . . . . . . . . . 34

III. There is no recognized constitutional right, and Paul does not identify a persuasive basis for any such right, to be competent during federal collateral review proceedings, nor does Paul establish that he is or has been incompetent during the proceedings on his motion under section 2255. . . . . . . . . . . . . . . . . . 40

A. Paul does not demonstrate that he has a constitutional right to be competent in order for federal post-conviction collateral review to proceed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

1. The *Gates* decision is not binding on this Court and does not offer a reasoned constitutional basis for the right to competence on post-conviction collateral review, nor do the history, tradition, and practices that inform the due process inquiry. . . . . . . . . . . . . 41

2. Paul fails to identify precisely the standard of competence that the Due Process Clause dictates in these circumstances. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

3. Other due process principles do not require an



Appellate Case: 05-3431 Page: 3 Date Filed: 08/02/2007 Entry ID: 3337172

inmate's competence in order for post-conviction collateral review to proceed. . . . . . . . . . . . . . . . . . . . . . . . . . . 48

B. Even assuming *arguendo* that the Constitution contemplates a right to competence during federal post-conviction collateral review, that right was not violated here. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58



Appellate Case: 05-3431 Page: 4 Date Filed: 08/02/2007 Entry ID: 3337172

## TABLE OF AUTHORITIES

**CASES**

**Supreme Court Cases**

*Albright v. Oliver*, 510 U.S. 266 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Burger v. Kemp*, 483 U.S. 776 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Calderon v. Thompson*, 523 U.S. 538 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*Chavez v. Martinez*, 538 U.S. 760 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Coleman v. Thompson*, 501 U.S. 722 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Douglas v. California*, 372 U.S. 353 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Drope v. Missouri*, 420 U.S. 162 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*Dusky v. United States*, 362 U.S. 402 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*Ford v. Wainwright*, 477 U.S. 399 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 47, 48

*Gilmore v. Utah*, 429 U.S. 1012 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Godinez v. Moran*, 509 U.S. 389 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Johnson v. Zerbst*, 304 U.S. 458 (1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Kimmelman v. Morrison*, 477 U.S. 365 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Montana v. Egelhoff*, 518 U.S. 37 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Murray v. Giarratano*, 492 U.S. 1 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Panetti v. Quarterman*, 127 S. Ct. 2842 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . 47



Appellate Case: 05-3431 Page: 5 Date Filed: 08/02/2007 Entry ID: 3337172

*Paul v. United States*, 534 U.S. 829 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Pennsylvania v. Finley*, 481 U.S. 551 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Rees v. Payton*, 384 U.S. 312 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47, 50

*Ross v. Moffitt*, 417 U.S. 600 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Rompilla v. Beard*, 545 U.S. 374 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Strickland v. Washington*, 466 U.S. 668 (1984) . . . . . . . . . . . . . . . . . . . . . . passim

*United States v. MacCollom*, 426 U.S. 317 (1976) . . . . . . . . . . . . . . . . . . . . 42, 49

*Washington v. Glucksberg*, 521 U.S. 702 (1997) . . . . . . . . . . . . . . . . . . . . . . 1, 46

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Wiggins v. Smith*, 539 U.S. 510 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*(Terry) Williams v. Taylor*, 529 U.S. 362 (2000) . . . . . . . . . . . . . . . . . . . . . . . . 11

**Federal Court of Appeals Cases**

*Beans v. Black*, 757 F.2d 933 (8th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Blackmon v. Armontrout*, 875 F.2d 164 (8th Cir. 1989) . . . . . . . . . . . . . . . . . . . . 35

*Branscomb v. Norris*, 47 F.3d 258 (8th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . 36

*Bucklew v. Luebbers*, 436 F.3d 1010 (8th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . 14

*Burton v. Dormire*, 295 F.3d 839 (8th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Carroll v. Schriro*, 243 F.3d 1097 (8th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . 18

*Ford v. Bowersox*, 256 F.3d 783 (8th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . 32, 34



Appellate Case: 05-3431 Page: 6 Date Filed: 08/02/2007 Entry ID: 3337172

*Fretwell v. Norris*, 133 F.3d 621 (8th Cir. 1998) . . . . . . . . . . . . . . . . . . . . 9, 17, 19

*Guinan v. Armontrout*, 909 F.2d 1224 (8th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . 23

*Hall v. Luebbers*, 296 F.3d 685 (8th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . 18

*Honeycutt v. Roper*, 426 F.3d 957 (8th Cir. 2005), *cert. denied*,
126 S. Ct. 2353 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*James v. State of Iowa*, 100 F.3d 586 (8th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . 35

*Johns v. Bowersox*, 203 F.3d 538 (8th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . 8

*Kenley v. Armontrout*, 937 F.2d 1298 (8th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . 28

*Kenley v. Bowersox*, 275 F.3d 709 (8th Cir. 2002) . . . . . . . . . . . . . . . . . . . . 10, 23

*King v. Kemna*, 266 F.3d 816 (8th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Link v. Luebbers*, 469 F.3d 1197 (8th Cir. 2006), *pet. for cert. filed*,
No. 07-5244 (U.S. July 9, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Lyons v. Luebbers*, 403 F.3d 585 (8th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . 35, 52

*McCauley-Bey v. Delo*, 97 F.3d 1104 (8th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . 17

*Malone v. Vasquez*, 138 F.3d 711 (8th Cir. 1998) . . . . . . . . . . . . . . . . . . . 17, 26, 27

*Medina v. Singletary*, 59 F.3d 1095 (11th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . 36

*Murray v. Delo*, 34 F.3d 1367 (8th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Nooner v. Norris*, 402 F.3d 801 (8th Cir. 2005), *cert. denied*,
126 S. Ct. 2037 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 23

*Preston v. Delo*, 100 F.3d 596 (8th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 24



Appellate Case: 05-3431 Page: 7 Date Filed: 08/02/2007 Entry ID: 3337172

*Reynolds v. Norris*, 86 F.3d 796 (8th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . 35, 36

*Ringo v. Roper*, 472 F.3d 1001 (8th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Rohan ex rel. Gates v. Woodford*, 333 F.3d 803 (9th Cir. 2003) . . . . . . . . . . passim

*Schlup v. Armontrout*, 941 F.2d 631 (8th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . 28

*Saunders v. United States*, 236 F.3d 950 (8th Cir. 2001) . . . . . . . . . . . . . . . . . . . 15

*Schneider v. Delo*, 85 F.3d 335 (8th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Scurr v. Moore*, 647 F.2d 854 (8th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Sidebottom v. Delo*, 46 F.3d 744 (8th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Cook*, 356 F.3d 913 (8th Cir. 2004) . . . . . . . . . . . . . . . . 33, 36, 38

*United States v. Long Crow*, 37 F.3d 1319 (8th Cir. 1994) . . . . . . . . . . . . . . . . . . . 2

*United States v. Maret*, 433 F.2d 1064 (8th Cir. 1970) . . . . . . . . . . . . . . . 33, 36, 38

*United States v. Paul*, 217 F.3d 989 (8th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Premachandra*, 32 F.3d 346 (8th Cir. 1994) . . . . . . . . . . . . . . . 36

*United States v. Robinson*, 253 F.3d 1065 (8th Cir. 2001) . . . . . . . . . . . . . . . . . . 39

*United States v. Smith*, 843 F.2d 1148 (8th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . 8

*Vogt v. United States*, 88 F.3d 587 (8th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . passim

*Wadlington v. United States*, 428 F.3d 779 (8th Cir. 2005),
*cert. denied*, 127 S. Ct. 723 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Walls v. Bowersox*, 151 F.3d 827 (8th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . 8, 9, 17



Appellate Case: 05-3431 Page: 8 Date Filed: 08/02/2007 Entry ID: 3337172

*Williams v. Armontrout*, 912 F.2d 924 (8th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . 17

*Williamson v. Ward*, 110 F.3d 1508 (10th Cir. 1997) . . . . . . . . . . . . . . . . . . . 18, 34

*Winfield v. Roper*, 460 F.3d 1026 (8th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . passim

**Federal District Court Cases**

*O.K. v. Bush*, 344 F. Supp.2d 44 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . passim

**STATUTES**

18 U.S.C. § 848(q) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

18 U.S.C. § 3593(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 2253 (c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 2254(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

28 U.S.C. § 2255 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

**MISCELLANEOUS**

WILLIAM BLACKSTONE, 4 COMMENTARIES ON THE LAWS OF ENGLAND (1769) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43, 44

SIR MATTHEW HALE, THE HISTORY OF THE PLEAS OF THE CROWN (1736) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43, 44



Appellate Case: 05-3431 Page: 9 Date Filed: 08/02/2007 Entry ID: 3337172

Now comes the United States of America, Appellee in the above-captioned matter, and files this Brief in response to Appellant's Brief.

## STATEMENT OF JURISDICTION

This Court, having determined that Paul has made a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253(c), as to three issues, has jurisdiction to entertain this appeal, insofar as it concerns the three issues upon which the certificate of appealability (COA) was granted. *See id.* § 1291. Accordingly, as to any issue for which COA has not been granted, this Court lacks jurisdiction to grant relief.

## STATEMENT OF THE ISSUES

In its Order of January 25, 2007, this Court granted review on the merits of the following three issues:

1. Whether trial counsel were ineffective for failing to investigate and present evidence of Paul's mental, medical, and physical history. *See Strickland v. Washington*, 466 U.S. 668 (1984)*; Burger v. Kemp,* 483 U.S. 776 (1987).

2. Whether trial counsel were ineffective for failing to investigate and assert Paul's incompetence to stand trial. *See Strickland v. Washington*, 466 U.S. 668 (1984)*; Vogt v. United States*, 88 F.3d 587 (8th Cir. 1996).

3. Whether Paul has a constitutional right to competence during federal habeas corpus proceedings and, if so, whether that constitutional right was violated. *See Washington v. Glucksberg*,

521 U.S. 702 (1997); *O.K. v. Bush*, 344 F. Supp.2d. 44 (D.D.C. 2004).

Paul includes two additional issues in his Brief – a *Brady* claim and another concerning his attempt to have the District Judge recused – both of which were included in his request for COA and which this Court rejected. Paul subsequently filed a motion in the Supreme Court to expand the COA to include these issues, among others, and the Court denied that motion. Because these two issues were not certified for merits briefing, and because, in the absence of a grant of COA, this Court lacks jurisdiction to grant relief on those issues, the Government does not address them here. The Government rests on its discussion of these two issues in its COA response, but will submit supplemental briefing if the Court so requests.

## STATEMENT OF THE CASE

Appellant Jeffrey William Paul was convicted and sentenced to death under the Federal Death Penalty Act (FDPA) in June 1997 in the United States District Court for the Western District of Arkansas for aiding and abetting a murder in the course of a robbery and for the knowing use of a firearm during a crime of violence that resulted in death. Tr 913; Tr 1174-75. This Court affirmed Paul's conviction and sentence on direct appeal, *see United States v. Paul*, 217 F.3d 989 (8th Cir. 2000), and the United States Supreme Court denied certiorari. *Paul v. United States*, 534 U.S.



Appellate Case: 05-3431 Page: 12 Date Filed: 08/02/2007 Entry ID: 3337172

829 (2001). Paul timely filed in the District Court a motion, pursuant to 28 U.S.C. § 2255, for new trial or to vacate his conviction and death sentence. The court, per Chief Judge Jimm Larry Hendren, denied relief on January 31, 2005. A01863, A01956. Paul then sought a COA, which the district court denied on October 26, 2005. A02235.

Paul filed a timely notice of appeal. On June 12, 2006, he filed a Motion to Remand to Fair and Impartial Judge for Consideration of New Evidence, in which Paul raised several of the claims for relief that were presented to the District Court during his section 2255 proceedings. This Court denied that motion on August 16, 2006, and ordered Paul to file a formal application for COA. He filed his application for COA on September 29, 2006, and on January 25, 2007, this Court granted the application in part and denied it in part. Paul timely filed his Brief on the merits on July 3, 2007.

## STATEMENT OF THE FACTS

This Court succinctly summarized the relevant record evidence in its published opinion on direct appeal:

> The evidence adduced at Paul's trial established that on June 22, 1995, Paul and an acquaintance, Trinity Ingle, followed Williams, an eighty-two-year-old man, from downtown Hot Springs Arkansas, to a walking trail in Hot Springs National Park. Paul and Ingle robbed and beat Williams, and then shot him in the head and shoulder. They attempted

to hide the body by pulling it about thirty feet off the trail. Williams' body was found on June 26, 1995, by a hiker, who found it under logs and rocks, with hands and ankles tightly bound by duct tape. A piece of duct tape around Williams' neck was presumed to have once been around Williams' mouth. The Deputy Coroner testified that Williams' head was nearly detached from his spine and there was a large open wound at the right temple above the jaw. Further, a State of Arkansas medical examiner testified that the body had gunshot wounds to the head and chest. The medical examiner testified that Williams died as a result of the wound to the head.

FBI agents testified that Williams' wallet was later found in the park near his body. A few days later, Williams' vehicle was found 150 feet down in a pit in a remote area of the park. Trinity Ingle's latent fingerprint was recovered from inside of the vehicle.

Several of Paul's acquaintances testified that Paul confessed his involvement in the crime to them. Each of these witnesses gave similar accounts of what Paul had told them about the offense. Chris [SIC] Rogers testified that Paul said that he and Ingle murdered an old man after following him into the park because he looked like an "easy target" to rob. Rogers testified that Paul stated when Williams resisted the robbery, they began beating him, including kicking him in the head hard enough to knock his eye out of its socket. Paul also told Rogers that because Williams was not yet dead following the beating, he shot him, and then Ingle shot him. Paul and Ingle then dragged the body into the woods and covered it up, according to what Paul told Rogers.

Rogers testimony was corroborated by several other witnesses. Christine Lapaglia testified that Paul told her he had killed someone when he kicked him and broke his neck. Cindy Wallace testified that Paul told her he had a recurring dream about following an old man, taking his money, and beating him so severely his eye came out of the socket. Paul told Wallace the old man begged for his life, but fearing that he would talk, Paul shot him in the head. Dan Coughlin testified Paul said that he and another Arkansas man had robbed an old man for his vehicle, then shot and killed him. Paul's brother also testified that



Appellate Case: 05-3431 Page: 14 Date Filed: 08/02/2007 Entry ID: 3337172

> he saw Paul and Ingle driving a car which matched the description of Williams' car.
>
> Paul left Arkansas shortly after the murder and evaded authorities for a little more than one year. He was arrested in August 1996, and confessed his involvement in the crime to FBI Agent John LaVoie. Paul's statement to LaVoie was consistent with the accounts given by Paul's acquaintances, except Paul told LaVoie that only Ingle had shot Williams.

*Paul,* 217 F.3d at 994-95.

## SUMMARY OF THE ARGUMENT

Counsel were not ineffective for deciding against presenting additional evidence of Paul's mental, medical, and physical history, beyond the testimony of his mother. Counsel conducted a professionally reasonable investigation, which included hiring a mitigation specialist and mental health experts to examine Paul, and during the punishment phase counsel presented information about Paul's troubled and chaotic family life and upbringing, his and his father's mental health histories, and his youthfulness. The additional witnesses that Paul identifies would have offered only cumulative or potentially harmful testimony. Also, counsel's decisions did not prejudice Paul because the Government offered a powerful aggravation case that focused on the heinous nature of the crime, which led the jury to unanimously find nine aggravating factors. The additional evidence that Paul now identifies is too insubstantial and cumulative to have overcome the weight of the aggravation.



Appellate Case: 05-3431 Page: 15 Date Filed: 08/02/2007 Entry ID: 3337172

Counsel also conducted a professionally reasonably investigation into Paul's competence to stand trial. Counsel requested multiple mental health evaluations for Paul, and reasonably stipulated to competency only after a credible professional evaluation found Paul mentally fit for trial. Paul's obstreperous, even bizarre, behavior during trial is not enough to establish incompetence and warrant a hearing. Moreover, Paul cannot establish prejudice because there is no reasonable probability that the court would have granted any additional motions to declare Paul incompetent, especially in light of the credible initial evaluation of Paul's competency.

Finally, no court has recognized an inmate's constitutional right to competence during post-conviction collateral review. Such a right does not form a part of our Nation's history and tradition, nor does it follow from other due process principles. If recognized, it would unduly compromise the Government's interest in finality, which has a preferred place in collateral review jurisprudence. In addition, Paul fails to precisely describe the standard for competence on post-conviction collateral review that due process would dictate. And even if Paul enjoys a right to competence, the record does not establish that he was actually incompetent during the section 2255 proceedings in the District Court. Paul demonstrated lucidity, even intelligence, during the proceedings, and there is no evidence that his mental state ever prevented counsel from asserting his claims or otherwise fulfilling their professional



Appellate Case: 05-3431 Page: 16 Date Filed: 08/02/2007 Entry ID: 3337172

obligations.

## STATEMENT OF THE STANDARD OF REVIEW

Where this Court has granted a COA in an action under section 2255, this Court reviews the District Court's denial of relief de novo. *See Wadlington v. United States*, 428 F.3d 779, 783 (8th Cir. 2005), *cert. denied*, 127 S. Ct. 723 (2006).

## ARGUMENT

### I. Paul fails to establish that his attorneys unreasonably failed to investigate and present his mental, medical, and physical history, and that the outcome of the proceedings probably would have been different in the absence of these alleged errors.

In his first claim, Paul argues that trial counsel rendered ineffective assistance, based upon counsel's alleged failure to adequately investigate and introduce evidence of his personal background. Paul concludes that, had counsel performed an adequate investigation, they could have uncovered significant information about his background that would have bolstered their mitigation presentation to the jury. Because Paul fails to establish that counsel's performance was professionally unreasonable, and a reasonably probability that the outcome of the sentencing proceeding would have been different even if counsel had done more, Paul is not entitled to relief on this claim.

Claims of ineffective assistance of counsel are evaluated under the two-prong



Appellate Case: 05-3431 Page: 17 Date Filed: 08/02/2007 Entry ID: 3337172

standard from *Strickland v. Washington,* 466 U.S. 668 (1984). Paul must establish both that counsel's performance was deficient and that he was prejudiced by the deficient performance. *Id.* at 687. Courts do not consider whether a particular course of conduct would be prudent or appropriate, but only whether it is constitutionally required. *Burger v. Kemp*, 483 U.S. 776, 794 (1987). To establish deficient performance, Paul must show that "counsel's representation fell below an objective standard of reasonableness," committing "errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland,* 466 U.S. at 687-88. "Strategic decisions made after a diligent investigation are 'virtually unchallengeable.'" *Johns v. Bowersox*, 203 F.3d 538 (8th Cir. 2000) (*quoting Strickland*, 466 U.S. at 690). Decisions regarding witness selection are normally left to counsel's judgment and are not subject to judicial second-guessing through hindsight. *See Walls v. Bowersox*, 151 F.3d 827, 834 (8th Cir. 1998). To establish prejudice, Paul must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. Collateral review of ineffective assistance claims is highly deferential to counsel. *See United States v. Smith*, 843 F.2d 1148, 1150 (8th Cir. 1988).



Appellate Case: 05-3431 Page: 18 Date Filed: 08/02/2007 Entry ID: 3337172

### A. Paul's counsel conducted a professionally reasonable investigation into possible mitigating evidence.

Paul accuses trial counsel of conducting an inadequate investigation into Paul's case and his personal history and background. *See* Appellant's Brief 45-51. Although the operative ineffective assistance standard requires that counsel's preparation and investigation conform to prevailing professional norms, *see Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986), courts have routinely rejected ineffective assistance claims based on allegations that counsel did not sufficiently investigate the defendant's case or his personal background. *See, e.g., Burger,* 483 U.S. at 790 (rejecting ineffective assistance claim where counsel conducted minimal investigation, was not aware of complete family history, and did not present evidence of defendant's brain damage); *Strickland,* 466 U.S. at 699 (rejecting ineffective assistance claim where counsel failed to investigate potential character witnesses and psychiatric experts); *Walls,* 151 F.3d at 834-35 (finding that counsel's performance was not unreasonable where counsel was aware of family witnesses but failed to call family members to testify); *Fretwell v. Norris*, 133 F.3d 621, 627 (8th Cir. 1998) (rejecting ineffective assistance claim where counsel failed to investigate family members knowledge of defendant's child abuse). Judgments about counsel's preparation and investigation must be highly deferential to counsel's decisions and actions. *See Burton v. Dormire,* 295

F.3d 839, 845 (8th Cir. 2002); *Kenley v. Bowersox*, 275 F.3d 709, 712 (8th Cir. 2002); *King v. Kemna*, 266 F.3d 816, 823 (8th Cir. 2001). Here, the record is replete with examples of counsel's efforts to investigate and develop potential mitigation evidence.

Paul's attorneys hired a mitigation specialist, Tena Francis, to compile background materials for the case and uncover additional witnesses for mitigation purposes. Francis even admits, and the record shows, that counsel requested additional funds and met with Paul and Paul's family, and that her investigation was incomplete not because of any failings on counsel's part but because the District Court refused to allow enough time and money. A02242-46; A00104-05. Thanks to counsel's employment of Francis, counsel was made aware of some friends and family members of Paul. Paul complains that counsel did not call these witnesses to testify at the punishment phase. But it does not follow that counsel conducted an inadequate investigation simply because counsel made a decision not to pursue these witnesses. On the contrary, as discussed *infra*, several sound professional rationales justified counsel's decision not to call them.

In addition, counsel specifically sought a psychiatric expert to evaluate Paul, identified Dr. Anthony Semone, and moved the court to permit Dr. Semone to conduct the evaluation and authorize expenses. A00099, A00106. Following Dr.



Appellate Case: 05-3431 Page: 20 Date Filed: 08/02/2007 Entry ID: 3337172

Semone's advice, counsel also sought another psychiatric expert, Dr. Irving Kuo, to evaluate Paul. A00136. Counsel did not ultimately employ Dr. Semone or Dr. Kuo as witnesses during the punishment phase, but again, this does not establish that counsel conducted an inadequate investigation. Rather, again as described further *infra*, counsel ultimately decided against employing expert witnesses whose testimony would either be merely cumulative or possibly double-edged and damaging.

In light of these examples of counsel's reasonable investigation prior to the trial and punishment phase, it is notable that Paul's case is distinct from the Supreme Court's recent decisions in this area. In *(Terry) Williams v. Taylor*, 529 U.S. 362 (2000), the Court emphasized the factors that marked counsel's deficient performance during punishment: counsel began preparing only a week before; did not investigate Williams's "nightmarish" childhood because they believed state law barred them from accessing Williams's childhood records; failed to introduce evidence of Williams's borderline retardation and that he did not advance past sixth grade; failed to seek favorable prison records; and failed to return the telephone call of a witness who offered to testify about Williams's participation in a prison ministry program. *Id.* at 395-96. In *Wiggins v. Smith*, 539 U.S. 510 (2003), counsel failed to expand their mitigation investigation beyond the pre-sentence investigation and social service

records they possessed, contrary to prevailing standards in Maryland and identified by the American Bar Association at the time. *Id.* at 523-27. Counsel never detailed Wiggins's suffering of severe privation, torment, and sexual violence in ways that would have proven helpful, according to the Court. *Id.* at 525-27. This potential evidence was so "powerful" in its potential to reduce Wiggins's culpability that its absence prejudiced Wiggins. *Id.* at 534-35. And in *Rompilla v. Beard*, 545 U.S. 374 (2005), although counsel presented some mitigation evidence, counsel completely failed to examine the file related to Rompilla's prior conviction for rape and assault, which obviously would have been raised by the government to establish aggravating factors. *Rompilla,* 545 U.S. at 383-386. The Court found the failure to investigate professionally unreasonable, despite the fact that both *Rompilla* and his family said there was no mitigation evidence available. *Id.* The error was prejudicial because information in the file would have allowed counsel to paint a severe picture of Rompilla, including evidence that Rompilla had an IQ in the mentally retarded range. *Id.* at 390-93.

By contrast, Paul's trial attorneys spent several months investigating and preparing for the trial, hired a mitigation specialist, sought mental health experts and obtained mental evaluations, and ultimately attempted to offer relevant mitigation evidence through Paul's mother, particularly of Paul's youth and upbringing, based



Appellate Case: 05-3431 Page: 22 Date Filed: 08/02/2007 Entry ID: 3337172

on their reasonably strategic decision that this evidence would best assist the jury in appraising Paul's culpability. Tr 977-1048. In addition, counsel thoroughly investigated the underlying facts and eventually introduced Ingle's tape-recorded jailhouse conversation in which he implicates two other people in the crime and attempted to exculpate Paul. Tr 1058-1110. Moreover, some jurors found the existence of multiple mitigating factors – including factors related to Paul's upbringing and childhood and to his youth at the time of the offense, *see* A00171-72. This record shows that trial counsel not only offered a reasonable case for mitigation, but had some limited success in persuading jurors during the penalty phase, a fact that militates heavily against any claim that counsel's investigation was professionally unreasonable (or prejudicial). Further, counsel simply could not have unearthed the kind of favorable evidence that proved crucial in these other cases: unlike Williams, Paul did not turn himself in to police or express remorse (in fact, he fled to another state to evade capture), or suffer from low intelligence that would have reduced his culpability, or render substantial service to the community or to law enforcement. Paul does not point to any additional evidence in his personal history that would have been powerful enough to reduce his moral culpability for the crime, particularly when juxtaposed with the Government's especially strong aggravation evidence. Rather, Paul's counsel reasonably endeavored to convince jurors of Paul's reduced culpability



Appellate Case: 05-3431 Page: 23 Date Filed: 08/02/2007 Entry ID: 3337172

by painting a hardly benign portrait of Paul's upbringing and emphasizing his youth (an effort that convinced some jurors that his upbringing, family life, youth, and peer relationships were mitigating factors).

In truth, no amount of investigation in this case would have produced the volume or type of mitigation evidence that became dispositive in these other cases. Counsel's investigation into Paul's personal history and background was not professionally unreasonable nor, as discussed *infra*, did counsel's performance prejudice Paul. *(Terry) Williams, Wiggins,* and *Rompilla* are thus easily distinguishable, as this Court has found on many occasions. *See, e.g., Ringo v. Roper,* 472 F.3d 1001, 1007-08 (8th Cir. 2007) (finding no ineffective assistance even though counsel did not call childhood development specialist to testify about childhood violence and neglect); *Winfield v. Roper,* 460 F.3d 1026, 1040-41 (8th Cir. 2006) (finding no ineffective assistance even though counsel did not call family members or mental health experts); *Bucklew v. Luebbers*, 436 F.3d 1010, 1017-20 (8th Cir. 2006) (rejecting ineffective assistance claims, even in light of *Wiggins* and *(Terry) Williams*); *Honeycutt v. Roper,* 426 F.3d 957, 961-62 (8th Cir. 2005), *cert. denied*, 126 S. Ct. 2353 (2006) (holding defendant was not prejudiced by counsel's failure to give defense psychiatrist complete medical and investigative records); *Nooner v. Norris*, 402 F.3d 801 (8th Cir. 2005), *cert. denied*, 126 S. Ct. 2037 (2006) (finding no



Appellate Case: 05-3431 Page: 24 Date Filed: 08/02/2007 Entry ID: 3337172

deficiency and no prejudice arising from counsel's failure to pursue psychiatric testing for mitigation purposes).

**B. Counsel presented a competent and professionally reasonable mitigation case to the jury, and ultimately convinced the jury to find the existence of some mitigating factors.**

Paul alleges that counsel rendered ineffective assistance at the sentencing phase of the trial by relying exclusively on the testimony of Paul's mother, and by failing to present further evidence related to his personal character and background and mental and emotional problems. *See* Appellant's Brief 48. He contends that Paula Paul's testimony was insufficient and should have been supplemented by lay and expert testimony concerning the abusive character and background of his father, Dennis Paul, as well as his own mental state. *Id.* Paul alleges that as a consequence, counsel did not adequately depict the effect of his internal family life and its impact on his mental state, behavior, actions, and ability to make good choices and judgments.

It is notable that in his section 2255 motion, Paul failed to specifically identify uncalled witnesses and the substance of their testimony, *see* A00583-625, and thus the claim originally before the District Court was insufficient to raise an issue of ineffective assistance of counsel. *See Saunders v. United States*, 236 F.3d 950, 952 (8th Cir. 2001). "Without knowing who [Paul] would have had counsel call as



Appellate Case: 05-3431 Page: 25 Date Filed: 08/02/2007 Entry ID: 3337172

witnesses and what their testimony in his defense might have been, it is not possible for . . . anyone to determine whether counsel's failure to identify (assuming trial counsel in fact failed to identify these witnesses) or to call such witnesses was unreasonable at the time of trial." *Id.* "Further, the lack of specificity as to both the identity of the conjectural witnesses and the content of their testimony prevents [assessment] whether there was prejudice to [Paul's] defense as a result of counsel's performance." *Id.* Based on the claim that was actually before the District Court, then, the court properly rejected the claim.

In other pleadings, and now in his COA application, Paul specifically identifies those uncalled witnesses that he believes to be so valuable to his defense. Among them, he says, are Susie Teague, Heather (Iaccobacci) Miller, Martha Massey, James Massey, Hubert Massey, Michael Roberson, Zach Dryden, and Richard and Melinda McCaslin. *See* Appellant's Brief 29-43. Disclosure of the identity of witnesses and the substance of their testimony is but a starting point, however, in the ineffective assistance analysis. Paul must demonstrate that counsel's failure to identify or call the witnesses at the time of trial was professionally unreasonable, and that the testimony of the uncalled witnesses would have created a reasonable probability of a different outcome. *See Winfield*, 460 F.3d at 1034. And any assessment of prejudice would require consideration of: the credibility of all witnesses, including



Appellate Case: 05-3431 Page: 26 Date Filed: 08/02/2007 Entry ID: 3337172

the likely impeachment of the uncalled defense witnesses; the interplay of the uncalled witnesses with the actual defense witnesses called; and the strength of the evidence actually presented by the prosecution. *See McCauley-Bey v. Delo*, 97 F.3d 1104, 1106 (8th Cir. 1996).

Paul cannot now establish that it was professionally unreasonable to limit the witness-based defense at the punishment phase to the testimony of Paul's mother. "Decisions relating to witness selection are normally left to counsel's judgment, and this judgment will not be second-guessed by hindsight." *Walls,* 151 F.3d at 834 (quoting *Williams v. Armontrout*, 912 F.2d 924, 934 (8th Cir. 1990)); *see also Sidebottom v. Delo*, 46 F.3d 744, 754 (8th Cir. 1994) (concluding that counsel was not ineffective for failing to call witnesses who would testify as to defendant's abusive family life). As this Court has made clear, "the decision not to call family members to testify in mitigation has been recognized as a 'strategic decision' that is 'normally left to counsel's judgment.'" *Malone v. Vasquez*, 138 F.3d 711, 721 (8th Cir. 1998) (quoting, in part, *Fretwell,* 133 F.3d at 627). Here, in assessing the post-conviction affidavits of the family and friends that Paul now identifies, *see* A02239-97, the character and background testimony that Paul proposes was in most instances merely cumulative of Mrs. Paul's testimony, and there is certainly no indication that it would have proven helpful. *See Winfield,* 460 F.3d at 1033 (no ineffective assistance where



Appellate Case: 05-3431 Page: 27 Date Filed: 08/02/2007 Entry ID: 3337172

proposed family members' testimony would have been cumulative); *Hall v. Luebbers*, 296 F.3d 685, 693 (8th Cir. 2002) (no ineffective assistance arising from counsel's "failure to present cumulative evidence"); *Carroll v. Schriro*, 243 F.3d 1097, 1100 (8th Cir. 2001) (no ineffective assistance where absent evidence was merely cumulative and would have added little to defense).

For example, Dryden, Richard McCaslin, Iacobacci, the Massies, Roberson, and Teague all describe Dennis Paul as hot-tempered, mean, unavailable to his son, and prone to lies and exaggeration.[1] *See* A02239, A02256, A02260, A02267-75, A02292, A02297. Yet the jury already heard a similar description of Dennis from Paula Paul, who described Dennis's departure from the Army due to a "mental breakdown," his sporadic work history, that his parents were alcoholics and that his siblings drank heavily, that he would simply disappear at times, and that he was a

---

[1] In connection with Roberson's proposed testimony that Paul followed his father's lead in exaggerating his "badness," Paul says his case is "remarkably similar" to *Williamson v. Ward*, 110 F.3d 1508 (10th Cir. 1997). Paul does not say precisely why his case is similar, and it is difficult to see how it is. In that case, which does not bind this Court, counsel failed to investigate and present to the jury evidence that another man had confessed to the murder. *See id.* at 1521-22. The evidence in Paul's case, however, includes an account of events in which Ingle is described as the shooter. Tr 743-44, 808, 812-14. Paul's counsel also played a recording in which Ingle admitted his guilt to a fellow inmate. Tr 1058-1110. In *Williamson*, counsel also failed to investigate the defendant's mental condition and seek a determination of incompetency. *Williamson*, 110 F.3d at 1514-20. Counsel relied only on select documents and did not seek a hearing, despite the fact that a court had previously found his client incompetent. *Id.* In Paul's case, counsel sought multiple expert opinions as to Paul's mental condition and moved for a hearing on competency, despite no previous determination that Paul was mentally incompetent. It is thus difficult to discern *Williamson's* import here.



Appellate Case: 05-3431 Page: 28 Date Filed: 08/02/2007 Entry ID: 3337172

pathological liar. *See*, *e.g.,* Tr 981-84, 996, 1009, 1027, 1042. Moreover, this Court has rejected claims that counsel is ineffective for failing to call witnesses who will testify about a defendant's abusive childhood, particularly where that topic has been implicated by other defense witnesses. *See Fretwell*, 133 F.3d at 627-28. And as both the Supreme Court and this Court have recognized, much of this type of evidence is a double-edged sword: "graphic evidence of a defendant's violent and troubled family background is 'by no means uniformly helpful.'" *Id.* at 628 (quoting *Burger,* 483 U.S. at 793).

In addition, although they try to attribute some positive characteristics to Paul, some of these potential witnesses also could have been placed in the position of admitting Paul's criminal acts and proclivities: Dryden, for example, explains that he and Paul ran away from home and attempted to steal a car and money, *see* A02239; and Richard McCaslin, Iacobacci, and Roberson each describe Paul's involvement in a gang-like criminal organization, *see* A02256, A02263, A02293. By ultimately confirming for the jury the Government's portrait of Paul as possessing proclivities toward crime and violence, these witnesses therefore could have been just as harmful to Paul's case as they were helpful. Counsel therefore had sound strategic reasons for not calling these additional mitigation witnesses.

From an examination of these witness affidavits, then, they are not particularly



Appellate Case: 05-3431 Page: 29 Date Filed: 08/02/2007 Entry ID: 3337172

useful to Paul (especially given his courtroom misconduct) and it is clear that the aspects of Paul's background encompassed by the additional evidence, to the extent they would have had any meaningful mitigating effect at all (a dubious conclusion given the double-edged nature of much of the proposed testimony), were already placed before the jury by Mrs. Paul's testimony and placed in the precise context proposed by section 2255 counsel during the defense's closing punishment phase arguments. *See* Tr 977-1110, 1148-52. In addition, although counsel was prepared to call Dr. Anthony Semone when Mrs. Paul concluded her testimony, Paul's behavior had become such that defense counsel strategically decided to close with no further testimony. Under the circumstances at the time, then, limiting the testimonial evidence to Paula Paul was a reasonable strategic decision on the part of counsel that is afforded deference. *Cf. Schneider v. Delo*, 85 F.3d 335, 341 (8th Cir. 1996) (counsel not ineffective in calling defendant's mother as the only defense witness during punishment phase).

In closing based on Mrs. Paul's testimony, defense counsel argued as follows:

> . . . [Y]ou can't choose your relatives. Jeffery didn't choose his parents. He got Paula and Dennis Paul when they were very, very young in life. He got paternal grandparents; they were alcoholics and vagabonds that beget Dennis. Dennis is the father. He is a pathological liar. He disappears, he's inconsistent, does not contribute in a meaningful way to his son. He is a corruptor of his son's morals – killing the, you know, killing Japanese. Killing someone, and he wasn't



Appellate Case: 05-3431 Page: 30 Date Filed: 08/02/2007 Entry ID: 3337172

> even born in World War II. He was not a positive influence.
>
> . . . [Paula] was too young to marry at that time, probably too young to have the children that she had and she was immature and didn't get them raised the right way. And it sure didn't help with a husband like Dennis . . . .
>
> * * *
>
> Jeff was in at least five different school districts. I lost count of the number of jobs Dennis had, the number of different houses that they lived in – can't keep track of it. Can you imagine what the impact on you would have been had you been in five different school districts, had you lived in all those different houses, had your father disappeared.
>
> Finally, we ask why did Jeff and Trinity Ingle do such a thing? We all know right from wrong, so does he. But I submit this closing; that is not the right question to ask. The question is why are we different? Why are we blessed? We are blessed from those people who contributed to our lives. None of us is self-made.
>
> * * *
>
> Hopefully, your upbringing was much better than Jeff's. . . . Remember, you didn't choose your parents. You didn't choose those people that you associated with; they chose you.

Tr 1148-1149, 1151-1152. The jury clearly found Paula Paul's testimony, in combination with defense counsel's closing argument, to be persuasive on the very points that Paul now claims that additional testimony was needed. The jury unanimously found the following mitigating factors: (1) that Paul experienced parental neglect, abandonment and corruptive influence, (2) that Paul experienced

parental abdication as to holding him accountable for his behavior, (3) that Paul experienced a chaotic family upbringing, and (4) that Paul identified with criminally convicted peers. A00171-72. In addition, eight jurors found as a mitigating factor that Paul experienced modeled parental irresponsibility, A00172, and six found that he was youthful at the time of the offense and that he had witnessed a prior shooting. *Id.* All of this mitigation that the jurors found was placed before them by Paul's counsel. There is simply no basis for concluding that trial counsel performed in a professionally unreasonable manner by relying on Paula Paul's testimony.

Finally, although Paul alleges that counsel should have called additional witnesses to develop evidence of Paul's alleged mental illness, such as Dr. Semone, *see* Appellant's Brief at 50, Paul leaves this Court to merely speculate as to what, precisely, his mental illness consists of and how evidence about it would have ultimately been helpful to his case. Counsel fully investigated the possibility of using expert testimony in mitigation, and provided notice that they had identified Dr. Semone. A00106-09. Counsel was prepared to call Dr. Semone, but decided against this after Mrs. Paul's testimony. Indeed, her testimony covered many aspects of Paul's and his father's mental health history, referencing Dennis's family history of alcoholism and his mental breakdown, as well as Paul's admission to the Rivendale psychiatric treatment facility. Tr 981-83, 1021.



Appellate Case: 05-3431 Page: 32 Date Filed: 08/02/2007 Entry ID: 3337172

This Court has repeatedly rejected ineffective assistance claims that were based on the failure of counsel to present evidence of mental illness or emotional disturbance. *See, e.g., Winfield,* 460 F.3d at 1041 (holding, in rejecting ineffective assistance claim, that "counsel is not required to shop for experts who will testify in a particular way"); *Nooner,* 402 F.3d at 809-810 (finding trial counsel acted reasonably in not presenting evidence of troubled childhood and alleged mental or psychological problems); *Kenley*, 275 F.3d at 713-14 (finding trial counsel acted reasonably in not calling mental health experts, even though mental health experts on collateral review said that petitioner suffered from mild brain damage, impulse control problems, depression, and personality disorders); *Guinan v. Armontrout*, 909 F.2d 1224, 1230 (8th Cir. 1990) (finding trial counsel acted reasonably in not calling mental health expert on defendant's mental and emotional problems, where expert's findings would have demonstrated defendant was violent and aggressive, and thus not proven to be mitigating). Although some of Paul's mental health history was covered by Paula Paul's testimony, additional evidence in this regard could have proven damaging. Any evidence relating to Paul's ability to control his impulses, for example, could have been more problematic than helpful, as it could have confirmed the Government's portrait of Paul as a dangerous person with violent criminal tendencies. In addition, there is no suggestion that Paul was mentally retarded. More



Appellate Case: 05-3431 Page: 33 Date Filed: 08/02/2007 Entry ID: 3337172

problematic for defense counsel was the fact that at the pre-trial competency evaluation, discussed *infra*, the Government's experts found that Paul suffered from no mental illness, but rather diagnosed him with anti-social personality disorder. A0096. In fact, had counsel attempted to proceed with expert testimony of mental disease, the Government could have countered with its own expert testimony that could certainly have further placed Paul in an unsympathetic light before the jury. *See Link v. Luebbers,* 469 F.3d 1197, 1203 (8th Cir. 2006), *pet. for cert. filed*, No. 07-5244 (U.S. July 9, 2007); *cf. Preston v. Delo*, 100 F.3d 596, 604 (8th Cir. 1996) (no ineffective assistance for failing to call mental health experts where state experts could testify as to no mental illness and where following this line of argument would have been damaging to defense). Counsel's decision not to pursue further testimony regarding Paul's mental state was therefore professionally reasonable.

Consequently, in light of the record evidence of counsel's effort to present Paul's character and background to the jury through his mother and through closing argument, which covered much the same ground as the proposed testimony of Paul's other family members and friends; the tape recording of Ingle in jail; and the dangers inherent in attempting to mitigate the crime through mental health testimony, counsel's performance was not professionally unreasonable.



Appellate Case: 05-3431 Page: 34 Date Filed: 08/02/2007 Entry ID: 3337172

### C. Counsel's performance did not prejudice Paul because there is no reasonable probability that the jury would have weighed the aggravation and mitigation evidence differently enough to ultimately avoid a death sentence.

Even assuming *arguendo* that trial counsel should have relied on other witnesses, the record does not indicate that such evidence would have made any difference in the outcome of Paul's punishment trial. As indicated already, the jury heard about Paul's upbringing, about his father's negative influence, and about his youth and mental health history, and the jury unanimously found that Paul suffered from parental neglect, chaos, and abdication, and that he identified with criminal peers, A00171-72; yet the jury still determined that death was an appropriate punishment. It is difficult to discern how Paul's allegations about counsel's performance should, or even could, undermine this Court's confidence in that outcome. Indeed, given the aggravation here, it simply cannot be said that there is a reasonable probability that the mere accumulation of evidence on these subjects would have altered the outcome of these proceedings.

The FDPA requires the jury to weigh aggravating evidence against mitigating evidence. If the aggravation evidence sufficiently outweighs the mitigating evidence, the jury may find that a death sentence is appropriate. *See* 18 U.S.C. § 3593(e). In discussing – and only briefly so – the prejudice prong, Paul gives all of his focus to



Appellate Case: 05-3431 Page: 35 Date Filed: 08/02/2007 Entry ID: 3337172

mitigation and concludes that, if counsel had called all of these available witnesses, the mitigation case would have been strong enough to generate more support on the jury for certain mitigating factors. As discussed *supra*, this is a highly dubious and entirely speculative claim; but even assuming it is true, Paul completely ignores the role of aggravation in the weighing process. Based on a compelling Government presentation about the facts of the crime, the jury unanimously found multiple aggravators, including that the crime had been committed in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse; the offense was committed with the expectation of pecuniary gain; that the victim was vulnerable due to old age; that Paul would be a future danger; that Paul eluded capture by fleeing to Mississippi; that Paul demonstrated lack of remorse; and that the crime had an impact on the victim's family. A00161-67. This combination of aggravating factors is itself quite powerful. Even if counsel had called more witnesses to discuss Paul's mental health, his family's mental health history, or his father's abusive behavior, none of this would have undermined the Government's compelling aggravation case against Paul. *See Malone*, 138 F.3d at 721 (holding that counsel's failure to call additional witnesses, including family members, to testify about defendant's upbringing and psychological problems did not prejudice defendant in light of government's aggravation evidence).



Appellate Case: 05-3431 Page: 36 Date Filed: 08/02/2007 Entry ID: 3337172

Contrary to Paul's implication, under the FDPA jurors do not simply tally the number of aggravators and mitigators proven and then reach a decision based on the comparative tally. Instead, the process is far more nuanced, enabling jurors to give full individualized consideration based on the facts and circumstances of the crime and the character and background of the defendant, to ultimately reach a reasoned moral judgment about the appropriate punishment for a very serious crime. Jurors are instructed to weigh these factors in their totality, and are not required, either constitutionally or statutorily, to give any particular weight to any particular factor. A few strong aggravators may ultimately outweigh many mitigators, and vice versa. In this case, the Government proved nine of its alleged aggravating factors, all except for one. *See* A00163-69. Even those jurors who found mitigators still believed that the Government had presented a compelling enough aggravation case to warrant a death sentence. Paul mistakenly implies that, had counsel presented the additional testimonial evidence, more jurors probably would have found the existence of more mitigation. But even if this is true (and again, there is simply no way for Paul to demonstrate this), it does not necessarily follow that those jurors would have given that mitigation *enough weight* to overcome the aggravating factors. *Cf. Malone*, 138 F.3d at 721. To accept Paul's claim, we must accept not only that the jury would have found the mitigating factor, but also that the jury would have assigned



Appellate Case: 05-3431 Page: 37 Date Filed: 08/02/2007 Entry ID: 3337172

particularly heavy weight to that factor. Paul does not, and cannot, establish this. In light of what the jurors had already heard from the defense, and the double-edged nature of much of the proposed additional testimony, the additional mitigation evidence simply would not have been substantial enough to outweigh the aggravation. *See Schlup v. Armontrout,* 941 F.2d 631, 639 (8th Cir. 1991); *but cf. Kenley v. Armontrout*, 937 F.2d 1298, 1308-09 (8th Cir. 1991) (finding prejudice where additional mitigation evidence would have been "substantial").

Therefore, it is not "reasonably probable" (indeed, it is highly unlikely) that the jury would have given less weight to the Government's powerful aggravation case merely because Paul had presented more witnesses to supplemental Paula Paul's testimony. And it is important to remember that under the FDPA, the aggravators need not substantially outweigh the mitigators; they need only *sufficiently* outweigh them. Under this sentencing scheme, it simply cannot be said on the instant record that there is a reasonable probability that the outcome of the sentencing phase would have been different had counsel called the witnesses that Paul now identifies. For ineffective assistance purposes, based on the weight of aggravation here and the dubious and cumulative nature of the additional testimony that Paul now claims should have been presented, this Court can remain confident in the jury's decision to impose a death sentence.



Appellate Case: 05-3431 Page: 38 Date Filed: 08/02/2007 Entry ID: 3337172

Accordingly, this Court should affirm the District Court's ruling that Paul failed to establish ineffective assistance of counsel and deny section 2255 relief.

## II. Paul fails to establish that his attorneys unreasonably failed to investigate and assert his incompetence to stand trial, and that the outcome of the proceedings would have been different in the absence of this alleged error.

In the second issue on appeal, Paul alleges that trial counsel – one of whom is a licensed mental health professional – mishandled the issue of his incompetence to stand trial by failing to seek a competency hearing before trial or after observing Paul's purported deterioration during trial. *See* Appellant's Brief 53. Once again, Paul fails to meet the *Strickland* standard for constitutionally ineffective counsel.

### A. Counsel diligently and reasonably investigated, and asserted questions concerning, Paul's competence to stand trial by filing multiple motions for mental evaluations and by ensuring that Paul's mental state was considered by multiple psychiatric experts.

The record reveals that counsel diligently pursued a determination of whether Paul was competent to stand trial.

On October 31, 1996, *Paul's own counsel* filed an initial motion for determination of competency to stand trial, A00049, which resulted in an evaluation of Paul at the Federal Correctional Institution at Butner, North Carolina and a determination that he was competent to stand trial. A00097. On November 26, 1996, the District Court granted *defense counsel's motion* and indicated that it would



Appellate Case: 05-3431 Page: 39 Date Filed: 08/02/2007 Entry ID: 3337172

schedule a competency hearing. A00059-63. Pursuant to the District Court's order, Paul was admitted to the Mental Health Division of FCI Butner for a psychiatric evaluation. On March 14, 1997, the court and all counsel of record received the report of the evaluation.

Drs. Bruce Berger and Angela Walden, who prepared the evaluation report, stated that they diagnosed Paul with antisocial personality disorder. They concluded Paul was competent to stand trial, based on Paul's "adequate knowledge of the courtroom proceedings, the roles of court personnel, the rights and responsibilities he himself has, the ability to work cooperatively with an attorney should he so choose, and the emotional stability to conform his behavior to proper courtroom decorum." A00097. They noted that Paul had average intelligence, was on no psychotropic medication, and that his negativity toward his counsel and the court was based on his pessimism about life, not a mental disorder. *Id.*

On April 4, 1997, defense counsel filed a "stipulation to [the] government['s] mental report as to the defendant's competency to stand trial" and waived the hearing on competency. A00102. The Government concurred in the stipulation. On April 23, 1997, the District Court entered an order in which it, first, fully explained its obligation to conduct a competency hearing if there was reasonable cause to believe that the defendant was presently incompetent, and then concluded that an evidentiary

hearing on Paul's competency was unnecessary in light of the report and stipulation. A00124-28.

In the meantime, the defense moved for the appointment of Dr. Semone to conduct a forensic neuropsychological examination of Paul for mitigation purposes. A00106. In May 1997, Dr. Semone informed defense counsel that, as a consequence of Paul's scores on the MMPI, as well as his clinical observations, he had reservations about Paul's competency to stand trial. A00137a-c. Dr. Semone concluded that it was his professional opinion that Paul was presently unable to understand the charges against him or cooperate sufficiently with counsel in effectively assisting in his own defense. Dr. Semone "also regard[ed] him [as] at serious risk of being unable to control himself throughout the rigors of trial." *Id.* Curiously, though, Dr. Semone gave only a vague description of Paul's mental condition and did not identify any specific mental illness from which Paul was suffering. In accordance with Dr. Semone's recommendation, Paul's counsel requested the appointment of Dr. Kuo to verify Dr. Semone's findings and make further recommendations to defense counsel and the court. A00135-37; *see also* A02296 (indicating Dr. Semone's continued opinion that Paul was incompetent to stand trial "despite the contrary opinion rendered by the psychiatrist to whom he had been referred at my request by his Counsel."). Given counsel's diligent inquiry into the issue of Paul's competency to



Appellate Case: 05-3431 Page: 41 Date Filed: 08/02/2007 Entry ID: 3337172

this point, if Dr. Kuo's evaluation of Paul had supported a determination of incompetence to stand trial, it is reasonable to conclude that counsel would have renewed their motion for a competency determination. That, however, was not Dr. Kuo's conclusion. *Id.* Thus, only Dr. Semone dissented on the question of Paul's competence, and when faced with Dr. Semone's views, counsel immediately moved for further evaluation. A00135-36.

This record is therefore more than sufficient to demonstrate counsel's reasonable diligence in pursuing the issue of Paul's competency to stand trial. Indeed, it is unclear (and Paul fails to make clear) what more counsel could have done in pursuing this issue, other than to repeatedly request competency hearings. Counsel's failure to request a competency hearing is unreasonable if the evidence raises substantial doubt about the defendant's mental competence to stand trial. *See Ford v. Bowersox,* 256 F.3d 783, 786 (8th Cir. 2001). Here, the record is clear that counsel diligently pursed initial competency proceedings, *see, e.g.,* A00049, and sought a subsequent evaluation once informed concerning Dr. Semone's views. Paul does not identify any information within counsel's knowledge that rendered the failure to seek *another* evaluation or hearing on the competency issue professionally unreasonable.

Although Paul now claims that his disruptive behavior at trial signaled a



Appellate Case: 05-3431 Page: 42 Date Filed: 08/02/2007 Entry ID: 3337172

deterioration in his mental condition that required further inquiry into his competency, his behavior at this point did not differ in any significant respect from his behavior at the points in time at which examining mental health experts found him competent – upon counsel's request for evaluation – to stand trial. Rather, Paul's behavior was consistent with the antisocial personality disorder diagnosed by the doctors at FCI Butner, *see* A00097. Of course, antisocial personality disorder is not tantamount to incompetence, so counsel cannot be found to have acted unreasonably under these circumstances. *See Vogt v. United States*, 88 F.3d 587, 591 (8th Cir. 1996) (finding no doubt about competence despite volatile behavior and deteriorating mental condition of defendant with history of mental illness, bipolar disorder, and use of anti-psychotic medication); *see also United States v. Cook,* 356 F.3d 913, 918 (8th Cir. 2004) (stating that defendant is not incompetent to stand trial merely because he possesses present mental illness); *United States v. Maret*, 433 F.2d 1064, 1067 (8th Cir. 1970) (stating that "mental illness does not equate with legal incompetence."). Moreover, it is hardly unusual for a criminal defendant to be uncooperative with, or resistant to, his counsel. This does not indicate, however, that the defendant is unable to understand the proceedings or to rationally communicate with his attorney. *Cf. Scurr v. Moore*, 647 F.2d 854, 858 (8th Cir. 1981) (finding that record did not indicate that defendant was now incompetent, even though defendant engaged in several



Appellate Case: 05-3431 Page: 43 Date Filed: 08/02/2007 Entry ID: 3337172

verbal outbursts during proceedings and had to be removed from courtroom). Under these circumstances, then, counsel's performance was not professionally unreasonable. *See Vogt,* 88 F.3d at 592; *cf. Beans v. Black*, 757 F.2d 933, 936 (8th Cir. 1985) (counsel not ineffective for failing to pursue subsequent competency hearing where counsel reasonably believed defendant was merely uncooperative but not incompetent); *Ford*, 256 F.3d at 787 (finding no ineffectiveness in failing to request competency hearing where defendant's unusual conduct was product of deep religious conviction and not incompetency).[2]

### B. Paul cannot establish prejudice arising from counsel's performance because there is no reasonably probability that further proceedings on this issue would have resulted in a finding of his incompetence.

Even assuming *arguendo* that counsel should have pursued a competency hearing or sought more evaluations, Paul fails to meet his burden of demonstrating prejudice. The lower court's opinion clearly indicates its belief that Paul was not incompetent, and that his behavior during trial, while disruptive, was likely a product of his antisocial personality and was not uncontrollable. *See* A01931-32. And as the court properly recognized, Paul was not entitled to a mid-trial competency hearing in

[2] Paul again says his case is similar to *Williamson*, 110 F.3d at 1508; but, again, that case is plainly different. There, counsel did not seek a mental competency evaluation, despite a prior determination of incompetency; Paul's counsel did, A00049. Williamson's counsel presented no evidence of the defendant's mental health history; Paul's did. Tr 1010-11, 1021. Nor, for the reasons discussed *supra*, is Paul's reliance on *Rompilla* here persuasive.



Appellate Case: 05-3431 Page: 44 Date Filed: 08/02/2007 Entry ID: 3337172

any event, regardless of whether counsel asked for one. *Id.* Therefore, even if counsel had pursued the competency issue further, Paul cannot demonstrate a reasonable probability that the outcome of the proceedings would have been different. *See James v. State of Iowa*, 100 F.3d 586, 589-90 (8th Cir. 1996) (counsel's failure to secure subsequent defense examination of defendant was not unreasonable or prejudicial because there was no reasonable probability that the court would have found defendant actually incompetent); *Blackmon v. Armontrout*, 875 F.2d 164, 167-68 (8th Cir. 1989) (appellate counsel's failure to raise issue concerning trial court's failure to hold competency hearing did not prejudice defendant because trial court was not required to hold hearing).

In determining whether the doubt about a defendant's competency is sufficient to implicate the need for additional procedures, a trial court should pay attention to a defendant's irrational behavior and demeanor toward the court, as well as existing medical evaluations and whether trial counsel has questioned defendant's competency. *Lyons v. Luebbers*, 403 F.3d 585, 593 (8th Cir. 2005); *Reynolds v. Norris,* 86 F.3d 796, 800 (8th Cir. 1996). Importantly, this Court has made clear that "'not every manifestation of mental illness demonstrates incompetence to stand trial. . . . [n]either low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial.'" *Vogt*, 88 F.3d at

591 (*quoting Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995)); *see also Cook,* 356 F.3d at 918 (stating that defendant is not incompetent merely because he possesses present mental illness); *Maret*, 433 F.2d at 1067 (stating that "mental illness does not equate with legal incompetence."). In addition, weight is given to the conclusions of psychiatric examiners that a defendant is competent to stand trial. *See United States v. Long Crow,* 37 F.3d 1319, 1325 (8th Cir. 1994) (finding no error in failure to hold a competency hearing where, *inter alia*, psychiatric examiners agreed that defendant was competent); *United States v. Premachandra*, 32 F.3d 346, 348 (8th Cir. 1994) (same). On collateral review, the trial court's determination that the defendant was competent is generally presumed correct, absent a procedural error. *See Reynolds*, 86 F.3d at 800.

As indicated *supra*, Dr. Berger and Dr. Walden diagnosed Paul with antisocial personality disorder, and concluded Paul was competent to stand trial. A00097. They noted that Paul had average intelligence, was on no psychotropic medication, and that his negativity toward his counsel and the court was based on his pessimism about life, not a mental disorder. *Id.* Defense counsel's stipulation was reasonable under the circumstances, to which the Government concurred. And even if counsel had raised doubts about Paul's competence, a defense attorney's doubts about competence are not enough to trigger a competency hearing. *Branscomb v. Norris*,

47 F.3d 258, 261 (8th Cir. 1995). The District Court's April 23, 1997 order offered a legally sound discussion of its obligation to conduct a competency hearing if there was reasonable cause to believe that the defendant was presently incompetent, and then concluded that an evidentiary hearing on Paul's competency was unnecessary. A00124-27. The court elaborated that it retained some discretion in determining whether to hold a hearing, and noted that unless reasonable cause exists to believe the defendant is incompetent, a hearing is unnecessary. *Id.* And in its opinion disposing of this issue on collateral review, the court made clear that although Paul was "disruptive and uncooperative," he was not uncontrollable and the medical evidence did not support a claim of incompetence. A01931-32. All of the record evidence points toward the conclusion that the District Court would not have found a hearing necessary or found Paul incompetent.

Moreover, Paul's attempt to equate uncooperative and hostile (though hardly "uncontrollable") behavior with incompetence to stand trial is unpersuasive. Disruptive, even irrational behavior, before the court does not equate to incompetency to stand trial and is not enough to justify a hearing on the defendant's competence. *See Vogt*, 88 F.3d at 591. Both the report from FCI Butner and the May 9, 1997, letter from Dr. Semone to defense counsel demonstrate that Paul's uncooperative and hostile behavior existed from the onset of the prosecution in this case, but neither the



Appellate Case: 05-3431 Page: 47 Date Filed: 08/02/2007 Entry ID: 3337172

evaluating doctors at FCI Butner nor, subsequently, Dr. Kuo found Paul incompetent to stand trial. Given the coincidence of this behavior on Paul's part and professional evaluations that disclosed no basis for a finding of incompetence to stand trial, it was reasonable for both defense counsel and the court to regard Paul's "disruptive, rude, threatening, menacing and hostile behavior" as evidence not of any legal incompetence but of the diagnosed anti-social personality disorder. *See Cook,* 356 F.3d at 918; *Maret*, 433 F.2d at 1067. The District Court's initial order of the FCI Butner evaluation makes it clear that it was aware of its responsibility to order a competency "hearing on its own motion, if there [wa]s reasonable cause to believe that the defendant [was presently] suffering from a mental disease or defect rendering him mentally incompetent to the extent that he [wa]s unable to understand the nature of the proceedings against him or to assist properly in his defense." A00126.

Paul thus identifies no substantial evidence to support his generally conclusory and speculative assertion that he suffered from a mental illness (even Dr. Semone did not specify this at the time), or that he may have been incompetent to stand trial.[3] Paul instead asks this Court to draw an inference of incompetence from his hostile

[3] The evidence that Paul asserted in his previously rejected motion for remand to justify further factual development – Dr. Halleck's June 6, 2006 report, A02308 – concludes that by the time of punishment, Paul could not communicate rationally with his attorneys; but other evidence in this case provides sufficient reason to question Dr. Halleck's post-hoc conclusion made nearly ten years after Paul's trial.



Appellate Case: 05-3431 Page: 48 Date Filed: 08/02/2007 Entry ID: 3337172

and disruptive behavior, contrary to relevant case law and to the conclusions of the examiners at FCI Butner and Dr. Kuo, who were fully aware of Paul's conduct and attitude. Nor does Paul demonstrate that he was incapable of sufficiently rational communication with his attorneys to assure a fair trial. *See United States v. Robinson*, 253 F.3d 1065, 1068 (8th Cir. 2001) (finding no error in competency determination or in failure to hold hearing after beginning of trial, where defendant was capable of rationally communicating with counsel so as to protect right to fair – not perfect – trial). Given the conclusory and speculative basis of his claim, there was no constitutional necessity for a competency hearing after the initial evaluation of competency nor during the trial, and nothing to rebut the presumption of correctness afforded to the District Court's determination that Paul was in fact competent. In light of the facts and the law applicable here, Paul simply does not demonstrate that, even if counsel had continued to pursue multiple competency hearings, the outcome would have been any different. The District Court provided fair and lawful process on this issue, and simply determined that Paul was not incompetent, a determination supported by the record.

The District Court therefore properly rejected this claim, and this Court should affirm the District Court's judgment.



Appellate Case: 05-3431 Page: 49 Date Filed: 08/02/2007 Entry ID: 3337172

## III. There is no recognized constitutional right, and Paul does not identify a persuasive basis for any such right, to be competent during federal collateral review proceedings, nor does Paul establish that he is or has been incompetent during the proceedings on his motion under section 2255.

As to the third issue, Paul alleges that he *may* have been incompetent at certain stages of the post-conviction proceedings pursuant to 28 U.S.C. § 2255. *See* Appellant's Brief 87. This claim was raised for the first time by Paul in his motion to remand, which this Court promptly denied. *See* Order of Aug. 16, 2006. Paul, however, fails to establish a constitutional right to competence in federal post-conviction collateral review proceedings. And even if such a right exists, Paul does not demonstrate that it was violated in this case, and even he can only speculate about his *possible* incompetence.

### A. Paul does not demonstrate that he has a constitutional right to be competent in order for federal post-conviction collateral review to proceed.

Neither this Court nor the Supreme Court, nor any other federal court, has recognized an inmate's constitutional right to be mentally competent during any stage of federal post-conviction collateral review. *See O.K. v. Bush*, 344 F. Supp.2d 44 (D.D.C. 2004) ("the prohibition on prosecution of an incompetent defendant, and the accompanying right to a determination of mental competence, cannot be said to extend to habeas proceedings."). The only authority on which Paul relies for direct

support of this claim is the Ninth Circuit's decision in *Rohan ex rel. Gates v. Woodford*, 333 F.3d 803 (9th Cir. 2003). But *Gates* is not binding on this Court and, in any event, it does not recognize a *constitutional* right to competence on federal post-conviction collateral review. *Gates* merely recognized is a *statutory* right under 21 U.S.C. § 848(q).

**1. The *Gates* decision is not binding on this Court and does not offer a reasoned constitutional basis for the right to competence on post-conviction collateral review, nor do the history, tradition, and practices that inform the due process inquiry.**

In *Gates*, a death-sentenced inmate from California sought a stay of his federal habeas corpus proceedings based on the claim that he was incompetent and thus unable to assist counsel. In granting the stay, the court found a statutory right to competence implicit in the right to counsel under section 848(q), and held that the *statutory* right to counsel during federal post-conviction proceedings in capital cases implies that the inmate be able to communicate rationally with counsel. *Gates,* 333 F.3d at 812-13. Paul concedes that *Gates* recognizes only a statutory right, but claims that right was "intertwined" with a due process right to competence. *See* Appellant's Brief 79. Paul correctly notes that the Ninth Circuit said the due process claim there was not "insubstantial," but the Ninth Circuit also found the due process claim to be "debatable" (which is why the court avoided deciding the constitutional question



Appellate Case: 05-3431 Page: 51 Date Filed: 08/02/2007 Entry ID: 3337172

there). *See Gates*, 334 F.3d at 814. Moreover, this is simply the court's characterization of the claim on its face; it is not a substitute for a deeper and fully reasoned constitutional due process analysis, which the *Gates* court did not provide. Thus, the only constitutional backdrop of due process that informed the Ninth Circuit's ultimate legal analysis was that concerning the rights to competence at trial and at the time of execution. And yet the Ninth Circuit conceded that the issue of competence during post-conviction proceedings fell "somewhere between those two lines of authority," and further stated that "[t]he constitutional right of competence to stand trial does not imply a coordinate requirement on collateral review." *Gates*, 334 F.3d at 810. Indeed, as the court correctly observed, there is no due process right to collateral review in the first place. *Id.* (citing *United States v. MacCollom*, 426 U.S. 317, 323 (1976)).

Again, neither this Circuit nor the Supreme Court has followed the *Gates* ruling, nor has this Court or the Supreme Court ever held that due process requires an inmate's competence in order for post-conviction collateral review to proceed. And there is reason to conclude that *Gates* does not provide a sound analytical justification for recognizing here a constitutional right to be competent. The Ninth Circuit contends that the common law authorities of Blackstone and Hale can be understood to imply that the requirement of a defendant's competence extended from

trial through execution. *See Gates*, 334 F.3d at 808. This understanding is problematic, and three responses are appropriate here.

First, if the Ninth Circuit's understanding of common law authority is accurate, then the right to competence would extend not just to post-conviction or habeas corpus review, but to all appellate review of a conviction and sentence (appeal of right, discretionary appellate review, second or successive post-conviction proceedings, etc.). Yet American criminal law has never insisted upon a right to an inmate's competence at all of these stages.

Second, Blackstone's discussion of accountability among lunatics (i.e., the insane or mentally incompetent) refers specifically to two events in criminal law and punishment: the trial event (including pre-trial processes such as arraignment) leading to judgment of guilt, which shall not be pronounced if the defendant "loses his senses;" and execution, which shall be stayed if, after execution, "he becomes of nonsane memory." *See* WILLIAM BLACKSTONE, 4 COMMENTARIES *24-25 (1769); *see also* SIR MATTHEW HALE, THE HISTORY OF THE PLEAS OF THE CROWN 35 (1736) (stating that a person shall not be *tried* for a crime if he "falls mad" after committing it, and if a defendant "falls mad" after judgment, he shall not be *executed*). According to Hale, competence was desirable in *these* limited contexts to assure that an accused could make, as Hale described it, a "just defence," and that an innocent person would



Appellate Case: 05-3431 Page: 53 Date Filed: 08/02/2007 Entry ID: 3337172

not be put to death. *Id.* Of course, the presumption of innocence no longer attaches on post-conviction review. And Paul does not claim here that he is factually innocent of the crime.

Third, Blackstone specifically states that "if a lunatic hath lucid intervals of understanding, he shall answer for what he does in those intervals, as if he had no deficiency." BLACKSTONE, *supra* note 3, at *25. As indicated *infra*, Paul's evidence does not demonstrate that he was actually incompetent throughout the lower court proceedings. Even assuming *arguendo* (but not conceding) that he suffered moments of irrationality relative to his suicide attempt, the record shows that he had significant periods of lucidity and rationality during the pendency of his section 2255 motion, which was filed *before* his suicide attempt. Those periods include the time when he and his attorneys were researching, developing, and asserting his claims for relief.

In light of the common law authorities and the due process rationale underlying the circumstances in which competence is required, it is clear why competence would make sense in the context of trial and even execution, but not post-conviction collateral review (or even appellate review). The trial and execution are events in which the coercive power of the state is affirmatively employed against the individual – at trial, the government affirmatively attempts to bring the community's moral condemnation upon the individual; at execution, the government affirmatively



Appellate Case: 05-3431 Page: 54 Date Filed: 08/02/2007 Entry ID: 3337172

attempts to carry out the sentence and bring it to finality. At these moments, the individual's competence is necessary to ensure that the state does not affirmatively deprive him of life, liberty, or property in the absence of his capacity to appreciate the state's action and to assist his counsel in defending him against it. Post-conviction collateral review, by contrast, is not an event marked by the sword of state authority acting affirmatively against the individual. Rather, the individual himself chooses to challenge his conviction or sentence; he wields the sword. And by this point, the individual has already had several other opportunities to challenge his conviction or sentence, has access to counsel in capital cases, and can even proceed through a "next friend" if his mental condition would prevent him from bringing the action himself. *See Whitmore v. Arkansas*, 495 U.S. 149, 162-63 (1990). The state may well shield itself against his claims of wrongful detention, but, unlike at trial, does not act affirmatively, only defensively. The rationale underlying the right to competence at trial or at the time of execution simply does not make sense in the context of post-conviction collateral review. *See O.K.*, 344 F. Supp.2d at 56-57.

Because Paul asserts a substantive right to competency, the absence of an identifiable tradition recognizing a right to competence during post-conviction collateral review forecloses his claim. Substantive due process rights are those that are deeply rooted in our Nation's history and traditions, and their assertion requires



Appellate Case: 05-3431 Page: 55 Date Filed: 08/02/2007 Entry ID: 3337172

a careful description of the relevant fundamental liberty interest. *Washington v. Glucksberg*, 521 U.S. 702, 720-721 (1997). The party asserting the right bears the burden of showing that it is so deeply rooted in the traditions and conscience of our people as to be ranked as fundamental. *Montana v. Egelhoff*, 518 U.S. 37, 47 (1996). Courts, moreover, should be reluctant to recognize new substantive due process rights. *See Chavez v. Martinez,* 538 U.S. 760, 775-76 (2003); *Glucksberg,* 521 U.S. at 720; *Albright v. Oliver*, 510 U.S. 266, 272 (1994). Given the narrow level of generality at which the asserted right must be analyzed (the right to be competent on post-conviction collateral review), Paul clearly does not demonstrate that this asserted right is *deeply rooted* in the traditions and conscience of our people: not only did the common law not recognize such a right, only a tiny fraction of modern jurisdictions require competence to proceed on state collateral review (and only as a matter of statutory interpretation, through their provisions for counsel). *See Gates*, 334 F.3d at 816. Thus, neither precedent nor practice can vindicate Paul's asserted right.

**2. Paul fails to identify precisely the standard of competence that the Due Process Clause dictates in these circumstances.**

Another troubling aspect of Paul's argument is that neither he, nor *Gates*, identifies the precise standard of competence that would apply in post-conviction review. This is critical, because the constitutional law relating to standards for



Appellate Case: 05-3431 Page: 56 Date Filed: 08/02/2007 Entry ID: 3337172

determining competence in various proceedings is not uniform.

The standard for competence to be tried is whether the defendant has sufficient present ability to consult with his lawyer to a rational degree of understanding and whether he has a rational as well as factual understanding of the proceedings against him. *See Dusky v. United States*, 362 U.S. 402 (1960). Although he does not apply any particular standard or urge adoption of the trial standard, Paul argues that he may not have had the rational ability to communicate with counsel, and thus seems to favor something akin to the trial standard, though he is not precise. Applying the trial standard to post-conviction collateral review, however, would fail to account for the important differences, as described above, between trial and collateral proceedings. The identifiable post-conviction standards – the standards for competence to be executed and for appeal waivers – do not, however, contain a specific rational communication element. *See Ford v. Wainwright*, 477 U.S. 399, 417 (1986); *id.* at 422 (Powell, J., concurring); *Rees v. Payton*, 384 U.S. 312, 314 (1966). Indeed, the Court has recently said that *Ford* does not preclude consideration of whether an inmate rationally understands the reasons for his execution, *Panetti v. Quarterman*, 127 S. Ct. 2842, 2862 (2007), but still has not identified any rational communication requirement for condemned inmates. This is consistent with Justice Powell's observation that if the standard for competence at the post-conviction stage focused



Appellate Case: 05-3431 Page: 57 Date Filed: 08/02/2007 Entry ID: 3337172

on the inmate's ability to assist counsel, the standard "would give too little weight to the State's interest in finality, since it implies a constitutional right to raise new challenges to one's criminal conviction until sentence has run its course." *Ford*, 477 U.S. at 421 n.2 (Powell, J., concurring).

Justice Powell's rationale obviously applies with equal force to the instant context, where the Government's interest in finality carries tremendous weight. *See Calderon v. Thompson,* 523 U.S. 538, 555-56 (1998). Constitutionalizing a general right to competence during post-conviction review, particularly one that focuses on the inmate's ability to rationally communicate with counsel, would seriously disrupt the structure and administration of the various post-conviction review schemes nationwide, including those in the States (for if recognized as a due process right, there seems to be no principled way to apply this right to *federal* post-conviction proceedings and not *State* post-conviction proceedings). Thus, the States would be forced to restructure their procedures to accommodate new claims of incompetence. This would have the effect of engendering more collateral litigation and thus undermining the virtues of comity, finality, and federalism that are trademarks of modern habeas law.

### 3. Other due process principles do not require an inmate's competence in order for post-conviction collateral review to proceed.



Appellate Case: 05-3431 Page: 58 Date Filed: 08/02/2007 Entry ID: 3337172

A constitutional right to competence on post-conviction collateral review does not follow from other recognized due process principles, including those that inform the constitutional right to counsel and the procedures for waiving post-conviction remedies.

There is no due process right to collateral review at all, *MacCollom*, 426 U.S. at 323, and no constitutional right to counsel on post-conviction review (and thus no right to the effective assistance thereof). *See Coleman v. Thompson,* 501 U.S. 722, 752, 756-57 (1991); *Murray v. Giarratano*, 492 U.S. 1, 7 (1989). Even if a state prisoner's mental deterioration prevented counsel from performing effectively in state post-conviction proceedings, the prisoner cannot obtain federal habeas relief on a claim related thereto. *See* 28 U.S.C. § 2254(i). Moreover, even though the right to counsel exists at certain critical stages of the criminal justice process, it is not clear that the right to counsel necessarily and always implies a concomitant requirement that the inmate be mentally competent. For example, the federal Constitution protects the right to counsel on the first appeal as of right. *See Douglas v. California*, 372 U.S. 353 (1963). Yet courts have never held that an inmate must also be mentally competent to assist counsel when pursuing such an appeal. As with appellate review, post-conviction review is sufficiently removed from the criminal trial that counsel can fulfill his responsibilities without significant assistance from the inmate. Of course,

both appellate and post-conviction review attorneys should, as a matter of professionalism and obligation under the statutory scheme, communicate with their clients. *See Murray v. Delo*, 34 F.3d 1367, 1373 (8th Cir. 1994). But such communication rarely is essential to the performance of counsel's role in the appellate and post-conviction review settings, where innocence is no longer presumed and where the attorney is no longer a shield to protect a client's innocence and liberty. *See Pennsylvania v. Finley*, 481 U.S. 551, 56-57 (1986); *Ross v. Moffitt*, 417 U.S. 600, 610-11 (1974).

Paul also relies on *Rees*, 384 U.S. at 314, and non-binding cases involving the ability of an incompetent inmate to overcome procedural barriers to consideration of his claims. But *Rees* involved waiver of certiorari review, did not recognize a due process right, and thus cannot be read to imply a general constitutional right to competence on post-conviction review. If significant at all, *Rees* simply sits in the context of the long-standing principle that waivers must be made knowingly, intelligently, and voluntarily. *See, e.g., Godinez v. Moran*, 509 U.S. 389, 401-02 (1993) (citing *Johnson v. Zerbst*, 304 U.S. 458 (1938)); *Gilmore v. Utah*, 429 U.S. 1012, 1013 (1976). And Paul's other cases do not discuss or even imply a general constitutional right to competence, and are easily distinguishable. *See O.K.*, 344 F. Supp.2d at 56 n.14. Rather, in those cases, the inmate's mental condition served as

an obstacle to asserting his constitutional claims in the first instance. In Paul's case, however, Paul's attorneys do not identify precisely when Paul was competent or incompetent or unable to rationally assist them, and in any event were able to fully and comprehensively assert Paul's constitutional claims from the outset of the proceedings. Unlike the cases he cites, then, Paul's mental condition was no obstacle to filing a timely petition and asserting his claims.

**B. Even assuming *arguendo* that the Constitution contemplates a right to competence during federal post-conviction collateral review, that right was not violated here.**

The next element of Paul's claim, that his right to competence during the section 2255 proceedings was violated, is somewhat question-begging because he does not precisely describe the controlling standard for determining competency to proceed on collateral review. But even assuming that a federal constitutional right to competence in post-conviction collateral proceedings exists, and that it includes a rational communication element, Paul simply does not demonstrate any violation of that right in his case, no matter how it is defined.

Here, unlike *Gates*, 334 F.3d at 805-07 & n.2, neither Paul nor his own expert can state unequivocally that he was incompetent during the District Court proceedings. Dr. Halleck's June 6, 2006 report simply states that since Paul's suicide attempt in November 2003, his mental condition has deteriorated (which is not the



Appellate Case: 05-3431 Page: 61 Date Filed: 08/02/2007 Entry ID: 3337172

same as legal incompetence) and that he "*is*" (present tense) "unable to assist his attorneys."[4] *See* A02326. Being suicidal is not tantamount to incompetence. *Drope v. Missouri*, 420 U.S. 162, 181 n.16 (1975); *Lyons*, 403 F.3d at 596. And even if Dr. Halleck meant to also say that Paul *was* incompetent during the prior proceedings, he offers little justification for that statement. Rather, he states in the most conclusory fashion that Paul has "difficulty" communicating with his attorneys, A02326, but he gives no examples and offers no factual nexus between Paul's mental state and the ability of his attorneys to represent him effectively. He also questions Paul's desire to forego his appeals and proceed to an execution. But while such a decision is risky and controversial, it is hardly a unique occurrence and certainly not evidence of incompetence. Paul adequately demonstrates his mental acuity in the August 6, 2004 video hearing related to that issue. *See* A01785-1842. And Paul's personal communications to the District Court demonstrate moral responsibility, cite to applicable cases, and offer rational (even if ill-advised) reasons for dispensing with

---

[4] Because Dr. Halleck had previously interviewed Paul during the pendency of his section 2255 motion, he could have drawn conclusions about Paul's competence to assist his attorneys at that time, and yet he does not make that assertion. Indeed, this simply highlights the various problems associated with post-hoc allegations of incompetence. Perhaps Dr. Halleck's refusal to unequivocally state that Paul was incompetent at the time his lawyers filed the section 2255 motion stems from the impossibility of ascertaining with reasonable medical certainty Paul's level of mental functioning at some past date, a conclusion so fraught with subjectivity and speculation that it could not be reliable.

further judicial review of his case. *See* A01579, A01629-30; A01671-74.

Indeed, his communications with the court reflect someone who is not only competent, but rational, articulate, and cognizant of his personal circumstances. Consider, for example, Paul's letter to Chief Judge Hendren filed on July 19, 2004, in which he intelligently discusses his situation and asks that he be declared competent. A01671-22. Consider also that Paul personally authenticated the motion to withdraw his uncounseled motion to waive his appeals, in which he agrees with his attorneys' advice that it is in his best interest to continue with his appeals, and which was executed in December 2003, a month *after* his suicide attempt. A01577b. These actions seem inconsistent with the claim that his mental state had deteriorated to the point that he could not rationally communicate with counsel. Consider further the transcript of the video hearing held on August 6, 2004 (well *after* Paul's suicide attempt, the point from which Dr. Halleck traces the origins of Paul's alleged mental deterioration, *see* A02326), which was held to evaluate Paul's competence to forego his appeals. *See* A01803. In response to Chief Judge Hendren's questions related to his mental state, Paul appears lucid and coherent:

> Paul: . . . I'm fully competent to make this decision on my own. Although I'm not going to sit up here and try to speak legalese with you, the decision I've made is to forego the habeas 2255 petition, waive it, and I would like to proceed forward with an execution date before November, as per



Appellate Case: 05-3431 Page: 63 Date Filed: 08/02/2007 Entry ID: 3337172

the judgment rendered against me by the jury in your court and upheld by you through your rulings on my direct appeal and the rulings, concurrent rulings, of the Eighth Circuit. . . .

If you have any questions about my psychiatric stability at the moment, the Justice Department's psychiatrist team here in the prison, as well as North Carolina, have all declared me competent, and you can – I'm sure they could fax you copies of any report or whatnot that you would need. I am competent . . .

* * *

Paul: I am with you. I'm following the conversation and am ready to proceed with what's the matter at hand whenever you're ready.

* * *

Paul: Yes, I do know who I am. I'm Jeffrey William Paul, and the Social Security Number and all that, yes, sir.

* * *

Court: Do you recall in one of your letters you – you mentioned to me a case that you wanted me to take into account? Do you remember that?

Paul: It'd be Bracy versus Bryant decision, and I – I actually got hold of that summary again and re-read it, and I – I think that the – there was a little article on it in the Criminal Law Review or one of those things like that, and it really didn't sum up the case as far as the history that was regarded.

Anyway, I – I thought that case sort of reaffirmed the Brady issues, which – which we have raised in – in the



Appellate Case: 05-3431 Page: 64 Date Filed: 08/02/2007 Entry ID: 3337172

petition, and I wanted to include it. I had mentioned it to counsel during a phone conversation, but I had wanted to insure that you got it, just in case you hadn't read the cite, so that you would consider it on reviewing that, the Brady issues, because obviously on the direct appeal, the Apprendi case was actually pending, and shortly after it was denied by the Eighth Circuit, it came out and possibly could have applied to my case because another prisoner had gotten some kind of a hearing on a Apprendi issue after that.

Court: All right. It was Dretke-Banks. Yeah, you have a good memory.

*   *   *

Court: . . . I want to ask you, do you understand that if your waiver goes through and there's an execution date set, that you would be put to death? You understand that?

Paul: I do understand that.

*   *   *

Paul: As far as the staff here is concerned, are concerned, I have report after report saying that my affect is normal and that my behavior, with the exception of a couple of disciplinary problems, is fine, competent.

Court: But would you agree with me that if a person doesn't know for sure where he is or he's hallucinating, hears voices, or maybe tries to take his own life, there might be a question that he's okay?

Paul: I agree. Yeah, I agree wholeheartedly with what you're saying, and . . . I don't believe that train of thought really applies to me. I know where I'm at. I hear voices when



Appellate Case: 05-3431 Page: 65 Date Filed: 08/02/2007 Entry ID: 3337172

> people are talking to me, but – and as far as taking my own life, I have a death sentence. . . . I'm not hearing any voices that aren't speaking to me.

*See* A01806-21. Paul goes on to discuss his legitimate reasons for foregoing further judicial review and reiterating his mental competence. He clearly understands where he is located, why he is there, and the consequences of the decision that he is discussing with the court. A01833-41. He even demonstrates an understanding of presidential politics of the day. A01822. These personal communications from Paul are, again, inconsistent with the notion that he was not mentally competent or that his mental acuity fell below some (unidentified) level of rationality required by the law to assist his attorneys on collateral review.

Next, Dr. Halleck concedes that other experts have concluded that Paul was malingering. A02325. And, of course, Paul himself effectively admitted that he was malingering. As Dr. Halleck states in his report, Paul met with chief psychologist Bill Elliott after his suicide attempt and said:

> "Look Elliott, you and I both know I am competent and I'm not going to kill myself. I am going to beat this case and be out of here in two years. My lawyer is working on a psychological angle and I'm just trying to help out the cause. Just give him a call and he'll explain everything. We don't need to go through all this bullshit."

A02320. Once again, Paul's own statements defy any assertion that, even after his suicide attempt, he was mentally incompetent. Surely, being manipulative is not the



Appellate Case: 05-3431 Page: 66 Date Filed: 08/02/2007 Entry ID: 3337172

equivalent of being incompetent. And yet the District Court provided substantial process to ensure Paul's competence to forego judicial review.

Finally, there is no evidence Paul has been unable to communicate rationally with his attorneys here. *Gates's* statutory holding, for example, is confined to issues for which the inmate's ability to communicate rationally with counsel would prove useful in the fulfillment of counsel's role. *See Gates*, 334 F.3d at 816. Where the issues that are being raised are – like the ones Paul raised in his section 2255 motion – simply record-based claims or extra-record claims where there is nothing useful that the inmate could add to counsel's efforts, those claims can be litigated on post-conviction review regardless of the inmate's mental state.

In *Gates*, the inmate raised claims related to his incompetence to stand trial and ineffective assistance of counsel for failure to pursue a competency hearing and failure to present adequate mitigating evidence. *See id.* at 818. As long as Gates remained incompetent – as he had been throughout his state and federal post-conviction proceedings – he could not convey private knowledge that would assist counsel in developing and asserting those claims. *Id.*

Paul raised similar claims in his section 2255 motion, but unlike *Gates*, there is no meaningful evidence that Paul was incompetent when his claims were considered, developed, and asserted in the District Court. Paul filed his section 2255



Appellate Case: 05-3431 Page: 67 Date Filed: 08/02/2007 Entry ID: 3337172

motion on December 17, 2002, nearly a year *before* his suicide attempt, the time period when Dr. Halleck suggests that his mental condition began to deteriorate to a point where (we do not know precisely where that point is) he became unable to assist his attorneys. *See* A02326. Even if we assume *arguendo* the veracity of Dr. Halleck's conclusion, it proves only that Paul's inability to assist his attorneys began *after* he had developed and asserted his claims for relief. Thus, even according to Paul's own evidence, Paul was able to rationally assist counsel during the time when his claims for relief were being considered, researched, developed, and presented to the lower court. *See id.* By the time of Paul's suicide attempt and his purported mental deterioration, there was no longer anything that Paul could have done to assist counsel in developing or asserting his claims for relief; they were already before the District Court, the Government had already responded, and the court could have disposed of his pending motions at any time.

Consequently, Paul is not entitled to any relief from this Court on his claim regarding his competence during the section 2255 proceedings.

## CONCLUSION

For all of the foregoing reasons, the Government respectfully requests that this Court affirm the denial of Paul's motion for post-conviction collateral relief pursuant to section 2255.



Appellate Case: 05-3431 Page: 68 Date Filed: 08/02/2007 Entry ID: 3337172

Respectfully submitted,

ROBERT C. BALFE
United States Attorney
Western District of Arkansas

STEVEN N. SNYDER
WILLIAM M. CROMWELL
Assistant United States Attorneys
Western District of Arkansas

MARGARET P. GRIFFEY
Chief, Capital Case Unit
United States Department of Justice

/s/ J. Richard Broughton

J. RICHARD BROUGHTON
Attorney, Capital Case Unit
United States Department of Justice
Criminal Division
1331 F Street, NW
Washington, D.C. 20530
(202) 616-8347
(202) 353-9779 (FAX)
Richard.broughton@usdoj.gov

COUNSEL FOR THE UNITED STATES

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing **Appellee's Brief** contains 13,986 words, excluding parts of the brief exempted by Rule 32(a)(7)(B)(iii) of the Federal Rules of Appellate Procedure, and thus complies with the type-volume provisions of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure. I further certify that this brief was prepared in a proportionally spaced typeface using Corel WordPerfect 12 with Times New Roman 14-point font, in compliance with Rules 32(a)(5) and (6) of the Federal Rules of Appellate Procedure. I further certify pursuant to Local Rule 28A(d)(2) that this Brief has been furnished on a 3½ inch computer diskette that has been scanned for, and is free of, viruses.

/s/ J. Richard Broughton

J. RICHARD BROUGHTON
Attorney, Capital Case Unit
United States Department of Justice
Criminal Division
1331 F Street, NW
Washington, D.C. 20530
(202) 616-8347
(202) 353-9779 (FAX)
Richard.broughton@usdoj.gov

COUNSEL FOR THE UNITED STATES

## CERTIFICATE OF SERVICE

I certify that, on August 1, 2007, a true and correct copy of this **Appellee's Brief** has been served via Federal Express, for overnight delivery, upon the following counsel for Appellant Paul:

Robert L. McGlasson, Esq.
1024 Clairemont Avenue
Decatur, Georgia 30030

Sean Dennis O'Brien, Esq.
Jennifer A. Merrigan, Esq.
Public Interest Litigation Clinic
305 E. 63rd Street
Kansas City, Missouri 64113.

/s/ J. Richard Broughton

J. RICHARD BROUGHTON
Attorney, Capital Case Unit
United States Department of Justice
Criminal Division
1331 F Street, NW
Washington, D.C. 20530
(202) 616-8347
(202) 353-9779 (FAX)
Richard.broughton@usdoj.gov

COUNSEL FOR THE UNITED STATES



Appellate Case: 05-3431 Page: 71 Date Filed: 08/02/2007 Entry ID: 3337172

Appellate Case: 05-3431 Page: 72 Date Filed: 08/02/2007 Entry ID: 3337172