Appellate Case: 05-3431 Page: 1 Date Filed: 09/19/2008 Entry ID: 3472857

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Appellee,** | ) | |
| | ) | |
| **v.** | ) | **NO. 05-3431** |
| | ) | |
| **JEFFREY WILLIAM PAUL,** | ) | |
| | ) | |
| **Appellant.** | ) | |
| | ) | |

# MOTION FOR REHEARING OR REHEARING *EN BANC*

Comes now Appellant and moves this Court for rehearing or rehearing *en banc* of its July 22, 2008, opinion affirming the summary denial of his Motion under 28 U.S.C. § 2255 because the case presents issues of exceptional importance, and because the panel's opinion conflicts with decisions of this Court and the Supreme Court, F.R.A.P. 35, and overlooks or misapprehends material points of fact and law, F.R.A.P. 40.

## FACTS

Jeff Paul was sentenced to death for a homicide that occurred when he was eighteen years old. Although Jeff has exhibited signs of major mental illness before, during and after his trial, there has never been an adversarial proceeding on on that issue. The panel's opinion omits facts important to the intertwined issues

of counsel's performance and appellant's mental health, and makes no mention of trial counsel's significant omissions.

In March of 1998, Jeff was evaluated at the U.S. Medical Center in Butner, North Carolina. Based on that evaluation, counsel on April 4, 1998, stipulated that their client was competent to proceed. A0102. Defense psychologist, Anthony Semone, disagreed, and on May 9, 1998, wrote that Jeff "is not now able sufficiently to understand the proceedings against him" and "he is also now unable to cooperate sufficiently with you in effectively assisting in his own defense." A00137C. He further warned that the stress of trial could produce a "psychotic panic" that would make him "appear hostile, demanding, perplexed and possibly disoriented." Add. 99-100. Dr. Semone urged counsel to seek psychiatric treatment, including medication, to stabilize Appellant for trial. Counsel retained psychiatrist Irving Kuo, who visited Mr. Paul once in May, 1998. Dr. Kuo's report was never filed with the trial court. The case proceeded to trial with no hearing or inquiry into the competence issue.

Pretrial mental evaluations were based on an incomplete investigation. The panel notes that counsel hired mitigation specialist Tena Francis, as if that alone satisfied their duty to investigate. Ms. Frances advised counsel that her investigation was incomplete, and provided names of witnesses she had not yet interviewed. A02243-44. She felt that the family had "a lot more information"

that they were reluctant to disclose because of "embarrassment, guilt and anxiety associated with . . . important historical information." A02244. Others, including James Massey, had not been interviewed at all. Over her objection, counsel simply ended her investigation. A02243. She didn't attempt to interview witnesses in the Hot Springs area because counsel "insisted on taking responsibility for interviewing local people who knew Jeff." A02244. Unfortunately, neither the Mississippi nor the Hot Springs investigations were completed before trial.

Appellant's § 2255 motion alleged that trial counsel were ineffective for failing to investigate Jeff's background and character, A0615-619, and as a result they failed to present evidence that Appellant suffers from severe mental disorders. A0623. Counsel requested leave to amend the petition when discovery and investigation were incomplete. A00624-25. Toward this end, counsel asked the district court to permit an examination by psychiatrist Seymour Halleck and psychologist Karen Froming, and moved for funds to employ a mitigation specialist. A01731. The district court initially approved counsel's request for a mental examination, but withdrew that order upon receiving a letter from Mr. Paul asking to be executed, A01630, and denied subsequent repeated requests to allow the evaluation to go forward after Appellant withdrew his waiver. A01057A. Habeas counsel also requested travel funds so that they could interview relevant witnesses. A01778. On January 31, 2005, the district court denied Mr. Paul's §



Appellate Case: 05-3431 Page: 3 Date Filed: 09/19/2008 Entry ID: 3472857

2255 motion on the pleadings, A01863, and denied requests for mental examination, travel expenses and investigation.

Without investigative and expert assistance, present counsel nevertheless developed important social history evidence that should have been uncovered by trial counsel. This included including witnesses to violent beatings by his father that Jeff suffered as a child and teenager, and psychotic hallucinations, paranoia and delusional thinking in the years and months prior to the offense and in the days and weeks before his trial. See Appellant's Brief, pp. 32-42. Declarations by these witnesses were tendered to the trial court, and summarily dismissed as "previously addressed by the Court in one way or another." A01995.

During the pendency of this appeal, Mr. Paul again expressed a desire to be executed. Counsel persuaded this Court to order a mental health evaluation by Dr. Halleck, who found that Jeff's "psychotic disorder most closely resembles a schizophrenic disorder, but a bipolar disorder must not be ruled out." App. 2325. Dr. Halleck also concluded that appellant did "not have sufficient concentration and memory to understand the events of a trial," and was "certainly incapable of proceeding through the penalty phase." A02326

Ignoring Dr. Halleck's findings, the panel denied Appellant's ineffective assistance of counsel claim, "deem[ing] it unnecessary" to decide whether counsel performed competently "because we conclude the record shows conclusively that



Appellate Case: 05-3431 Page: 4 Date Filed: 09/19/2008 Entry ID: 3472857

Paul did not suffer prejudice from what he now alleges was deficient performance by counsel." Op., 3. On Appellant's mental health, the panel applied a "clearly erroneous" standard of review to the district court's findings, Op. 25, even though the law requires and the parties agreed that the district court's judgment on the pleadings must be reviewed *de novo*. Appellant's Brief, 15; Appellee's Brief, 7.

Because the panel's opinion speculated about the scope and findings of Dr. Kuo's evaluation, Op. 18, 25, 33, counsel asked Dr. Kuo if his evaluation or findings might have been affected by the new evidence developed in post-conviction. Dr. Kuo concluded, "such evidence would have affected the scope of my examination. Further, the evidence provides valid reasons to question the assessment of anti-social personality disorder, and to consider instead a diagnosis of schizophrenia, which cannot be ruled out at this time." Declaration of Dr. Kuo (attached), p. 6.

The panel's opinion affirming the district court's judgment on the pleadings in the face of contested facts presents issues of general importance, is inconsistent with the Supreme Court's decisions, and misapprehends material points of fact and law, as explained below.

**1. The panel's resolution of contested issues of fact on unsworn written reports without a hearing is inconsistent with *Walker v. Johnston*, 312 U.S. 275 (1941), *Lindhorst v. United States*, 585 F.2d 361 (8th Cir. 1981), and 28 U.S.C. § 2255, and presents questions of general interest and importance.**



Appellate Case: 05-3431 Page: 5 Date Filed: 09/19/2008 Entry ID: 3472857

Jeff Paul is entitled to a hearing on his § 2255 motion "unless the motion, files, and record *conclusively* show that he is not entitled to relief." 28 U.S.C. § 2255 (emphasis added).[1] Three of four mental health examiners believe that Jeff Paul suffered from psychosis before and during his trial. Dr. Semone, Dr. Halleck and Dr. Kuo have submitted declarations explaining findings. Although the constitutionality of Jeff's conviction and sentence of death hinges on whether he is mentally ill, no mental health expert has ever appeared in court.

Even without investigative resources, counsel established that Jeff's mental health involved genuine issues of material fact. Both Dr. Semone and Dr. Halleck submitted declarations attesting that he suffers psychosis and was incompetent at trial. App. 2248-52, 2294-96. Nevertheless, without giving Appellant a chance to present evidence, the district court resolved all credibility issues in favor of the unsworn report of the Butner evaluation, directly contrary to 28 U.S.C. § 2255:

> "An opposing affidavit by the Government is not part of "the files and records of the case' which can be taken to "conclusively show that the prisoner is entitled to no relief,' within 28 U.S.C. § 2255. The principle was established by the Supreme Court as long ago as

---

[1] "Numerous cases have held that the government's answer and affidavits are not conclusive against the movant, and if they raise disputed issues of fact a hearing must be held." Advisory Committee Notes to Rule 5, Rules Governing Section 2255 Cases, citing *Machibroda v. United States,* 368 U.S. 487, 494, 495 (1962); *United States v. Salerno,* 290 F.2d 105, 106 (2nd Cir. 1961); *Romero v. United States,* 327 F.2d 711, 712 (5th Cir. 1964); *Scott v. United States,* 349 F.2d 641, 642, 643 (6th Cir. 1965); *Scheibelhut v. United States,* 357 F.2d 743, 745 (6th Cir. 1966); and *Del Piano v. United States,* 362 F.2d 931, 932, 933 (3rd Cir. 1966).

> *Walker v. Johnston*, 312 U.S. 275 (1941) . . . . "It is true that they (appellant's allegations) are denied in the (government) affidavits filed with the return to the rule, but the denials only serve to make the issues which must be resolved by evidence taken in the usual way. They can have no other office. The witnesses who made them must be subjected to examination *Ore tenus* or by deposition as are all other witnesses."

*Lindhorst v. United States*, 585 F.2d 361 (8th Cir. 1981), quoting *Walker v. Johnston, supra,* at 286-87. Judgment on the pleadings is not permitted where a prisoner's constitutional claims turn on contested issues of fact:

> Not by the pleadings and affidavits, but by the whole of the testimony, must it be determined whether the petitioner has carried his burden of proof and shown his right to a discharge. The Government's contention that his allegations are improbable and unbelievable cannot serve to deny him an opportunity to support them by evidence. On this record it is his right to be heard.

*Machibroda v. United Sates,* 368 U.S. 487, 495 (1962). See also *United States v. Unger,* 665 F.2d 251, 254 (8th Cir. 1981) (adopting *Machibroda* and holding that "an evidentiary hearing should be held where . . . the factual allegations contained in the petitioner's motion and affidavit relate primarily to purported occurrences outside the courtroom and upon which the record could, therefore, cast no real light and where the circumstances alleged are not of a kind that the district judge could completely resolve by drawing upon his own personal knowledge or



Appellate Case: 05-3431 Page: 7 Date Filed: 09/19/2008 Entry ID: 3472857

recollection.")[2] This principle applies with special force to competency issues; the court cannot dispense with a hearing by resort to conflicting reports. *Speedy v. Wyrick,* 702 F. 2d 723, 726 (8th Cir. 1983). Therefore, "[Fed. R. Civ. P.] 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Nietzke v. Williams*, 490 U.S. 319, 327 (1989).

The necessity for a hearing on this § 2255 motion presents a question of general importance because Jeff Paul is the first death-sentenced federal prisoner after *Furman v. Georgia*, 408 U.S. 238 (1972), to appeal the denial of habeas

---

[2]The panel's conclusion that the district court could deny relief based exclusively on its own observations of Jeff, relying on *Holmes v. Buss*, 506 F.3d 576 (7th Cir. 2007), Op., 34, misreads *Holmes.* Because the evidence on Holmes' competence was divided, the court of appeals reversed:

> We cannot agree with the state that the transcript of the December 1 hearing, taken together with the equivocal expert reports, so plainly demonstrates the petitioner's competence that the district judge was entitled to truncate the hearing by denying the petitioner's counsel an opportunity to cross-examine Dr. Olive.

*Id.,* at 581. Because the record on competence was "equivocal," the court of appeals was "perplexed as to why the petitioner's lawyer was not permitted to cross-examine Dr. Olive." *Id.* In Mr. Paul's case, his self-defeating behavior at trial was probably the product of mental illness. Dr. Semone had warned in writing that Appellant was incompetent, and that he was "at serious risk of being unable to control himself through the rigors of trial." App. 0137C. Dr. Semone was present for Jeff's mid-trial breakdown, and advised counsel that these were the psychotic symptoms he had predicted. Add. 100. Dr. Kuo agreed this behavior was "strongly indicative of a psychotic process," and neither he nor the Butner examiners "can rule out a subsequent psychotic episode, especially in light of Dr. Semone's first-hand observations." Kuo, 3.



Appellate Case: 05-3431 Page: 8 Date Filed: 09/19/2008 Entry ID: 3472857

corpus relief to this Court. The district court's opinion denying relief without investigative or expert resources, discovery or a hearing deprived Appellant of any opportunity to prove his case, or to cross-examine or rebut contrary evidence.

Such summary proceedings are inconsistent with the nature and purpose of habeas corpus. "The Framers viewed freedom from unlawful restraint as a fundamental precept of liberty, and they understood the writ of habeas corpus as a vital instrument to secure that freedom." *Boumediene v. Bush*, 128 S. Ct. 2229, 2244 (2008). To be sure, the Government's interest in finality of criminal convictions is strong, and justifies heightened pleading requirements. *McFarland v. Scott*, 512 U.S. 849, 856 (1994). "Yet arrayed against the interest in finality is the very purpose of the writ of habeas corpus - to safeguard a person's freedom from detention in violation of constitutional guarantees." *Blackledge v. Allison*, 431 U.S. 63, 72 (1977). Further, "Congress has recognized that federal habeas corpus has a particularly important role to play in promoting fundamental fairness in the imposition of the death penalty." *McFarland v. Scott, supra*, at 859.

In order for the Writ to serve this vital function, a petitioner such as Jeff Paul "is 'entitled to careful consideration and plenary processing of [his claim,] including full opportunity for presentation of the relevant facts.'" *Blackledge v. Allison, supra,* at 82-83. Where evidence outside the trial record contradicts the constitutionality of the judgment and sentence, "the function of 28 U. S. C. § 2255

Appellate Case: 05-3431 Page: 9 Date Filed: 09/19/2008 Entry ID: 3472857

can be served . . . only by affording the hearing which its provisions require." *Machibroda v. United States*, 368 U.S. 487, 496 (1962). It is "uncontroversial . . . that the privilege of habeas corpus entitles the prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation" of relevant law.'" *Boumediene v. Bush, supra,* at 2266, quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 302 (2001). Further, "the means to supplement the record on review, even in the post-conviction habeas setting" may be "constitutionally required." 128 S. Ct. at 2270.

Even though the court below circumvented the fact-finding process, habeas counsel tendered evidence that a psychotic teen-aged defendant was sentenced to death by a jury that was ignorant of his significant history of trauma and mental illness. These allegations are not "so 'palpably incredible,' so 'patently frivolous or false,' as to warrant summary dismissal." *Blackledge v. Allison, supra,* at 76, quoting *Pennsylvania ex rel. Herman v. Claudy*, 350 U.S. 116, 119 (1965). Appellant respectfully submits that under the precedents of this Court and the Supreme Court, this case must be remanded for an evidentiary hearing so that he may have a fair opportunity to shoulder his burden of proof.

**2. The panel's decision that Mr. Paul was not prejudiced by counsel's deficient performance is inconsistent with *Williams v. Taylor*, *Wiggins v. Smith,* and *Rompilla v. Beard.***

The panel's opinion denying Appellant's claim of ineffective assistance of



Appellate Case: 05-3431 Page: 10 Date Filed: 09/19/2008 Entry ID: 3472857

counsel bypassed the issue of performance, focusing instead on the issue of prejudice. According to the panel, Jeff could not show prejudice because the Government's aggravation case was strong, Op. 11, and because the mitigation evidence developed by post-conviction counsel was "merely cumulative" to trial counsel's one-witness defense. Op. 4, 8, 15, 20. Both conclusions are inconsistent Supreme Court decisions and misapprehend material point of fact and law.

The panel opinion is "unreasonable insofar as it failed to evaluate the totality of the available mitigation evidence -- both that adduced at trial, and the evidence adduced in the habeas proceeding -- in reweighing it against the evidence in aggravation." *Williams v. Taylor*, 529 U.S. 362. 397-98 (2000). Just as the Virginia court unreasonably failed to account for all the mitigating evidence, so, too, the panel failed to account for the sharp distinction between the new post-conviction evidence and the one-witness trial defense. The panel's opinion that Mrs. Paul testified about Appellant's "*abusive* father," Op. 11 (emphasis added), when in fact not a scintilla of evidence was presented to the jury about Dennis Paul's extraordinary violence toward Jeff, as described by Susie Teague, Heather Miller, and James, Hubert and Martha Massey. See Add. 102-107, App. 2261, 2267, 2277, 2284. The distinction between trial counsel's deficient investigation and the post-conviction investigation was clear to Dr. Kuo, who found the new evidence to be "probative of several distinct aspects of Mr. Paul's diagnostic



Appellate Case: 05-3431 Page: 11 Date Filed: 09/19/2008 Entry ID: 3472857

picture," suggesting Post-Traumatic Stress Disorder, schizophrenia, and possible neurological injury. Kuo, 3. He stated, "At the time of my pretrial examination, I had no information of this nature and quality." Kuo, 4. Thus, the panel's opinion is inconsistent with *Williams* and with *Wiggins v. Smith,* 539 U.S. 510, 535 (2003) ("In assessing prejudice, we reweigh the evidence in aggravation against the totality of available mitigating evidence.")

The panel's analysis is also inconsistent with *Rompilla v. Beard*, 545 U.S. 374 (2005), where the Court recognized the relationship between a competent life history investigation and reliable mental health findings. While pretrial mental health experts found "nothing useful" to Rompilla's defense, "their post-conviction counterparts, alerted by information from school, medical, and prison records that trial counsel never saw, found plenty of 'red flags' pointing up a need to test further." 545 U.S. at 392. Testing prompted by new information revealed that Rompilla suffered from brain damage, schizophrenia and borderline intellectual functioning. "These findings in turn would probably have prompted" even more investigation. *Id.* In addition to the fact that Jeff Paul "has the kind of troubled history we have declared relevant to assessing a defendant's moral culpability," *Wiggins* at 535 (citing *Penry v. Lynaugh*, 492 U.S. 302, 319 (1989)), Dr. Kuo's recent declaration shows a that incompetent investigation caused unreliable mental health findings. *See,* Dudley and Leonard, *Getting It Right: Life*



Appellate Case: 05-3431 Page: 12 Date Filed: 09/19/2008 Entry ID: 3472857

*History Investigation as the Foundation for a Reliable Mental Health Assessment,* 36 HOFSTRA L. REV. 963 (Spring, 2008).

The prejudice from trial counsel's deficient performance is evident in the declaration of Dr. Kuo, who had concluded pretrial that Mr. Paul was competent to proceed. After reviewing the new witness' declarations, Dr. Kuo concluded:

- "[G]iven Mr. Paul's behavior at the time of trial, it would have been important to assess his mental condition at that time. The deterioration of his behavior and hygiene is strongly indicative of a psychotic process." (Kuo, p. 3)
- "Evidence of his abusive upbringing raises the possibility of Post-Traumatic Stress Disorder, and in Mr. Paul's case was severe enough to warrant a neurological consult." (Kuo, p. 3)
- "Evidence of the frequent occurrence of alcoholism, suicide and mental illness in Mr. Paul's family suggests a strong genetic predisposition to mental illness." (Kuo, p. 3)
- "[Jeff's] history of hallucinations and odd thinking since childhood, much of it predating the offense, is consistent with a young man in the prodromal stage of schizophrenia." (Kuo, p. 3)
- "I do not believe that any of these symptoms or his behavior in the courtroom can be dismissed as the product of an anti-social personality." (Kuo, p. 5)
- The evidence now available is "strongly indicative that Jeff was in the prodromal stage of schizophrenia prior to his trial." (Kuo, p. 6)

The truncated fact-finding process discussed in connection with Issue 1, above, deprived Mr. Paul of his day in court to establish his claim of ineffective assistance of counsel.

The panel's opinion also gives excess weight to the Government's case in aggravation of punishment, concluding, erroneously, that the newly proffered mitigating evidence would have no impact on the jury's findings as to aggravating



Appellate Case: 05-3431 Page: 13 Date Filed: 09/19/2008 Entry ID: 3472857

factors, such as future dangerousness. Op. 11. Evidence that Appellant suffers from a treatable mental disease would probably influence one or more jurors' views on such matters. Even were that not the case, the panel's rationale is inconsistent *Williams,* where the Court observed that "Mitigating evidence unrelated to dangerousness may alter the jury's selection of penalty, even if it does not undermine or rebut the prosecution's death-eligibility case." 529 U.S. at 398. Further, *Rompilla* emphasized that "it is possible that a jury could have heard it all and still have decided on the death penalty, that is not the test." 545 U.S. at 392. Rather, the question is whether "the undiscovered 'mitigating evidence, taken as a whole, "might well have influenced the jury's appraisal" of [Rompilla's] culpability.'" *Id.,* quoting *Wiggins* at 538. Appellant's burden is satisfied if "there is a reasonable probability that at least one juror would have struck a different balance." *Id.*, at 537.

In *Williams, Wiggins* and *Rompilla,* the Court found counsel's failure to investigate mitigation was prejudicial in cases involving far more aggravated crimes, and in the cases of *Williams* and *Rompilla,* defendants had extensive violent records. While the aggravation in Jeff Paul's case is much weaker, the mitigating evidence he tendered to the post-conviction court is as compelling as that presented in *Williams, Wiggins* and *Rompilla.* Because there is no meaningful distinction between the Supreme Court's recent decisions and this case, the Court



Appellate Case: 05-3431 Page: 14 Date Filed: 09/19/2008 Entry ID: 3472857

should grant rehearing *en banc.*

**3. The application of a "clearly erroneous" standard of review in an appeal from a judgment on the pleadings is inconsistent with *St. Paul Fire and Marine Ins. Co. v. F.D.I.C.*, 968 F.2d 695 (8th Cir. 1992).**

The panel denied Appellant's mental health claims because it found the judgment below was not "clearly erroneous," Op. at 25, and because "We are not left with the definite and firm conviction that the court was mistaken." *Id.* at 33. Both parties herein agreed that a district court's judgment on the pleadings is reviewed *de novo* on appeal. Appellant's Brief, 15; Appellee's Brief, 7. The panel's opinion is therefore inconsistent with the well-established rule of this Court. *St. Paul Fire and Marine Ins. Co. v. F.D.I.C.*, 968 F.2d 695 (8th Cir. 1992).

WHEREFORE, for the foregoing reasons, Appellant respectfully moves this Court to grant rehearing or rehearing en banc, and to grant such further relief as the Court deems appropriate.

Respectfully submitted,

/s/ Sean D. O'Brien
SEAN D. O'BRIEN, MoBar #30116
JENNIFER A. MERRIGAN, #56733
305 East 63rd Street
Kansas City, MO 64113
826-363-2795 ● Fax 816-363-2799
E-mail: sobrien@pilc.net

/s/ Robert L. McGlasson
ROBERT L. MCGLASSON
Georgia Bar No. 492638
1024 Clairemont Ave.
Decatur, GA 30030
404-314-7664 Fax 404-373-9338
E-mail: rlmcglasson@comcast.net

*Attorneys for Appellant*



Appellate Case: 05-3431 Page: 15 Date Filed: 09/19/2008 Entry ID: 3472857

## CERTIFICATE OF SERVICE

I, Sean O'Brien, do hereby certify that on September 19, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

Mr. Robert C. Balfe
United States Attorney
Western District of Arkansas

William Cromwell
Assistant U.S. Attorneys
P.O. Box 1524
Fort Smith, AR 72901

Ms. Margaret Griffey
Attorney, Capital Case Unit
United States Department of Justice
Criminal Division
1331 F. Street, NW
Washington, D.C. 20530
Margaret.griffey@usdoj.gov

/s/ Sean D. O'Brien
Sean D. O'Brien

Appellate Case: 05-3431 Page: 16 Date Filed: 09/19/2008 Entry ID: 3472857